## QUACKENBUSH *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 145.   Argued February 1, 1900.—Decided March 19, 1900.

The act of February 16, 1897, c. 235, for the relief of Commander Quackenbush enacted "that the provisions of law regulating appointments in the Navy by promotion in the line, and limiting the number of commanders to be appointed in the United States naval service, are hereby suspended for the purpose of this act only, and only so far as they affect John N. Quackenbush; and the President of the United States is hereby authorized, in the exercise of his discretion and judgment, to nominate and, by and with the advice and consent of the Senate, to appoint said John N. Quackenbush, late a commander in the Navy of the United States, to the same grade and rank of commander in the United States Navy as of the date of August first, eighteen hundred and eighty-three, and to place him on the retired list of the Navy, as of the date of June first, eighteen hundred and ninety-five: *Provided*, That he shall receive no pay or emoluments except from the date of such reappointment." *Held*,

 (1) That its only apparent office was to forbid the allowance of pay or emoluments from August 1, 1883, by limiting such allowance to the date of the reappointment, which, in that view, must be regarded as the date of appointment under the act;

 (2) That it was remedial in its character, and should be construed as ratifying prior payments which the Government in its counter-claim was seeking to recover back.

THIS was an appeal from a judgment of the Court of Claims dismissing the petition of claimant and the counter-claim of defendants in the above entitled cause.  33 C. Cl. 355.  The peti-

tion was filed December 11, 1897, and sought recovery for amounts alleged to be due from the Government "from the 1st day of August, 1883, until the first day of June, 1895, at the rate of $2300 per annum, being the leave or waiting orders pay as prescribed by law for the grade or rank of commander, and from the 1st day of June, 1895, to the 26th day of May, 1897, at the rate of $2625 per annum, being three-quarters of the sea pay as prescribed by law for the grade or rank of commander." The counter-claim averred that claimant was indebted to defendants "by reason of payments illegally made to him during the period from June 9, 1874, up to and including March 31, 1881, when the claimant was not in the naval service of the United States."

The facts were in substance as follows: Claimant was duly and legally commissioned a commander in the Navy of the United States by and with the advice and consent of the Senate on the 2d day of January, 1872, to take rank from the 25th day of May, 1871. Thereafter in the month of February, 1874, certain charges were filed against claimant before the Navy Department, and a court martial was duly organized to try the same, by which, after hearing, and in that month, claimant was sentenced to be dismissed from the naval service of the United States. This sentence was approved by the President, and the Secretary of the Navy, June 9, 1874, addressed a letter to the claimant at Boston, Massachusetts, informing him of the sentence, its approval, and that from that day claimant would "cease to be an officer of the Navy." On June 12, the Secretary of the Navy addressed a letter to "Commander John N. Quackenbush, U. S. Navy," requesting him to "return to the Department the order dismissing you from the Navy." Both these letters were delivered to claimant on one and the same day, to wit, on or about June 15, 1874. In obedience to the order of June 12, claimant returned the letter of dismissal.

December 8, 1874, the Secretary of the Navy officially addressed a letter to claimant, in which, after setting forth the finding of the court martial and the sentence, the Secretary said: "This sentence was, on the 9th day of June, 1874, mitigated to suspension from rank and duty on furlough pay for six

years, the suspension to date from that day." December 13, 1877, the Secretary of the Navy transmitted to the Attorney General of the United States a statement of the facts in the case, embodying the correspondence, and requested his advice thereon. In answer, the Attorney General, March 16, 1878, 15 Op. Atty. Gen. 463, advised the Secretary that the claimant remained an officer in the Navy.

In that correspondence the date of the President's approval of the sentence was given as June 5, 1874, but the Attorney General held that the letter of the Secretary of December 8, 1874, was satisfactory proof of the mitigation of the sentence by the President on June 9, and that it was competent for him to grant commutation on that day.

Section 1363 of the Revised Statutes provided that "there shall be allowed on the active list of the line officers of the Navy . . . ninety commanders . . . ;" which number was, by the act of August 5, 1882, 22 Stat. 284, 286, c. 391, reduced to eighty-five.

June 10, 1874, the President sent to the Senate the name of W. S. Schley to be commander in the Navy, " vice Quackenbush, dismissed," and the nomination was duly confirmed June 12, 1874. The records of the Navy Department show that there were ninety commanders borne on the active list of the Navy from the date of the appointment of W. S. Schley to August 5, 1882, when the number was reduced by law, except during the early part of the year 1879, when the list was temporarily increased to ninety-one by Congress.

After Schley's appointment, as Quackenbush was still on the Register, the Secretary of the Navy, when his attention was called to the matter, directed that no nomination should be made to the next succeeding vacancy, and this recommendation was complied with, no appointment being made to the position subsequently becoming vacant by the retirement of Commodore Morris.

The Court of Claims found that pursuant to the commuted sentence and by virtue thereof, claimant was placed under suspension, on furlough pay, and was borne upon the official printed Navy Register as a commander in the Navy " under suspension,"

from the year 1874 up to and including the year 1880, when the sentence expired, and from and after the date of such expiration he was borne on said Register as a commander of the Navy on waiting orders until the publication of the Register for 1883, when his name was omitted and dropped from the same. "During the whole of said period he retained his proper and legal place on the official list of commanders in the Navy, and was advanced in numbers from year to year, as promotions of his seniors in said grade occurred, in the same manner and in all respects in the regular course, as other officers in his said grade and rank were advanced."

He was paid as on furlough for six years, and thereafter, from June 9, 1880, to March 31, 1881, was taken, by direction, on the rolls of the paymaster at the Navy Yard at Boston, Massachusetts, and paid as on " waiting orders."

On the thirtieth of March, 1881, the judgment of this court was announced in *Blake* v. *United States*, 103 U. S. 227. It was there ruled that the President has the power to supersede and remove an officer of the Army or the Navy by the appointment, by and with the advice and consent of the Senate, of his successor. What direction, if any, was given at the time, in view of this decision, did not appear; but, at all events, from March 31, 1881, until May 26, 1897, claimant received no pay, allowances or emoluments of any kind.

In April, 1882, the views of the Secretary of the Navy were requested by the chairman of the Committee on Naval Affairs in the House of Representatives in respect of the propriety of the passage of a pending bill " to confirm the status of John N. Quackenbush, a commander in the United States Navy," and the Secretary responded that it appeared to have been the intention of the President in exercising clemency in the case of Commander Quackenbush that he should be retained in the service, and that it seemed just, in view of all the circumstances, that he should be entitled to the benefit of that clemency.

The following entry appears opposite claimant's name on one of the records of the Navy Department: " 208. John N. Quackenbush left off the register published 1st August, 1883, by direction of the Secretary of the Navy; his action being based upon a decision of the Supreme Court."

December 6, 1883, the Secretary of the Navy designated to the President, D. W. Mullan, to be a commander in the Navy "vice John N. Quackenbush, no longer in the service;" and in that month the President sent to the Senate the nomination of said Mullan to be a commander in the Navy from the 3d day of July, 1882, "vice John N. Quackenbush, no longer in the service." The nomination was duly confirmed and Mullan commissioned.

Claimant filed a petition April 15, 1895, to the Secretary of the Navy asking that he be restored to his proper position on the list of naval officers, but the Secretary declined to grant any relief, holding that the matter of his rights was *res judicata* under the action taken by his predecessor. In May, 1895, claimant exhibited a petition in the Supreme Court of the District of Columbia praying that a writ of mandamus issue to the Secretary of the Navy requiring him to put claimant's name back on the list of naval officers, which was dismissed February 11, 1896.

Bills for the relief of Commander Quackenbush were introduced in Congress from 1882 to 1897, and many reports made thereon.

February 16, 1897, an act entitled "An act for the relief of John N. Quackenbush, late a commander in the United States Navy," became a law without the approval of the President. 29 Stat. 803, c. 235. This act read as follows:

"That the provisions of law regulating appointments in the Navy by promotion in the line, and limiting the number of commanders to be appointed in the United States naval service, are hereby suspended for the purpose of this act only, and only so far as they affect John N. Quackenbush; and the President of the United States is hereby authorized, in the exercise of his discretion and judgment, to nominate and, by and with the advice and consent of the Senate, to appoint said John N. Quackenbush, late a commander in the Navy of the United States, to the same grade and rank of commander in the United States Navy as of the date of August first, eighteen hundred and eighty-three, and to place him on the retired list of the Navy, as of the date of June first, eighteen hundred and ninety-five:

*Provided,* That he shall receive no pay or emoluments except from the date of such reappointment."

In May, 1897, in accordance with the terms of the act, the President nominated claimant to the Senate to be a commander on the retired list of the Navy, and the nomination was confirmed. The claimant took the prescribed oath on May 26, 1897, since which last mentioned date he has been paid three-quarters of the sea pay of a commander in the Navy on the active list. Claimant reached the age of sixty-two on May 31, 1895.

*Mr. John Paul Jones* and *Mr. Richard R. Beall* for appellant.

*Mr. Assistant Attorney Walker* for the United States. *Mr. Assistant Attorney General Pradt* was on his brief.

MR. CHIEF JUSTICE FULLER, after making the above statement, delivered the opinion of the court.

In *Blake* v. *United States,* 103 U. S. 227, it was held that the President has power, by and with the advice and consent of the Senate, to displace an officer in the army or navy by the appointment of another person in his place, and that when that has been done he cannot again become an officer except upon a new appointment with like advice and consent. The ruling has been repeatedly affirmed and followed. *Keyes* v. *United States,* 109 U. S. 336; *Mullan* v. *United States,* 140 U. S. 240. And see *Parsons* v. *United States,* 167 U. S. 324.

When through mistake, or misapprehension, or for any other reason, injustice has been done, Congress has the power to accord relief, but the courts cannot of their own motion revise the grounds of action taken in the constitutional exercise of executive power.

Claimant is a commander in the United States Navy on the retired list by virtue of his appointment and retirement under the act of February 16, 1897. This suit was brought to recover pay as on leave or waiting orders from August 1, 1883, to June 1,

1895, when claimant reached the age of sixty-two years, and pay as a retired officer from June 1, 1895, to May 26, 1897, when he took the prescribed oath on his appointment; and if he is entitled to the amount sued for, it is by reason of the act and not otherwise.

The act described claimant in title and context as "late a commander in the United States Navy;" suspended as to him "the provisions of law regulating appointments in the Navy by promotion in the line, and limiting the number of commanders to be appointed in the United States Naval service;" and authorized the President to appoint him to the same grade and rank as of the date of August 1, 1883, and to place him on the retired list as of the date of June 1, 1895.

Congress thereby declared that claimant had been prior to August 1, 1883, but was not then, a commander, and that, in order to enable him to be appointed to that grade and rank, it was necessary to suspend the act of August 5, 1882, which limited the number of commanders on the active list, and also forbade promotion or increase of pay in the retired list. 22 Stat. 284, c. 391.

If the act had contained nothing more, the effect of the appointment would have been, in addition to fixing claimant's status as to grade and rank as of August 1, 1883, to entitle him to pay from that date, but not to pay prior thereto, as by the terms of the act he was not a commander until appointed thereunder. The act did not stop there, however, but a proviso was added which read: "*Provided*, That he shall receive no pay or emoluments except from the date of such reappointment."

Provisos are commonly used to limit, restrain or otherwise modify the language of the enacting clause, and that was the manifest purpose of this proviso. But it was not needed to limit the effect of the act prior to August 1, 1883, or to enlarge its effect after that date. Its only apparent office was to forbid the allowance of pay or emoluments from August 1, 1883, by limiting such allowance to "the date of such reappointment," which in that view must be regarded as the date of appointment under the act.

This result is in harmony with the language used. Claimant

had been a commander and had ceased to be such. He was again appointed, and that second appointment was a reappointment. The date of that reappointment was certainly when it was actually made, and to substitute the date to which the appointment related for the actual date would defeat the obvious object of the proviso, which was to narrow the effect of giving the reappointment a retroactive operation. It was allowed that effect as to grade and rank, but not as to current pay or emoluments between August 1, 1883, and the date of the reappointment. This fixed his relative position with reference to other officers in matters of privilege and precedence, and of command. if detailed to active service in time of war. At the same time by referring the appointment to the prior date the retired pay was sensibly affected. If claimant had been appointed without any such reference and had been immediately retired, he would have been entitled to only one-half the sea pay of a commander under section 1588 of the Revised Statutes, for he would not have reached the age of sixty-two years while in the service; but as he was appointed as of August 1, 1883, he was put constructively in the service from that date and so, on being retired, became entitled to three-quarters of such sea pay; and this he is receiving.

Something was said in argument in respect of the commission, which is not set out in the findings, but whatever its terms, the conclusion remains unaffected. The appointment and the commission are distinct acts, and the terms of the commission cannot change the effect of the appointment as defined by the statute.

Assuming claimant to have been lawfully out of the service June, 1874, the Government preferred a counter-claim for the pay received by him from then to March 31, 1881. But the act of February 16, 1897, was remedial in its character, and although we cannot for that reason give to its terms any other than their obvious meaning, we think it should be construed as ratifying these prior payments.

Congress had all the facts before it and intended to award some measure of relief in view of the circumstances. It went so far and no farther, but it went far enough to enable us to

hold that it would be inconsistent with the object of the act to sustain any recovery back.

In short we agree with the Court of Claims in its conclusions on both branches of the case.

*Judgment affirmed.*