WORK, SECRETARY OF THE INTERIOR, *v.* BRAFFET, ADMINISTRATOR.

CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 344. Argued March 8, 1928.—Decided April 9, 1928.

1. Under Rev. Stats. § 2347, and Rule I of the Regulations of the Land Department of March 6, 1903, an application to purchase coal

lands within a previously surveyed school section conferred upon the applicant merely the status of a contestant endeavoring to overcome the presumptive title of the State upon the ground (in this case) that the mineral character of the land was known before the school grant attached. P. 565.

2. This amounted to no more than a privilege of seeking to restore the land applied for to the public domain; and success in the contest would not have brought the contestant a preferential right of entry, there being no statute or regulation securing him such a preference. *Id.*

3. Such a privilege was subject to withdrawal by the United States pending the contest, and was withdrawn by the Act of February 25, 1920, which provides that coal lands shall be disposed of only by lease, excepting only (§ 37), "valid claims existent at the date of the passage of this Act and thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws," etc. *Id.*

4. The exception in the Leasing Act, above quoted, embraces only such substantial claims as would on compliance with the provisions of the former law, ripen into ownership. P. 566.

57 App. D. C. 192, reversed.

CERTIORARI, 275 U. S. 514, to a judgment of the Court of Appeals of the District of Columbia, sustaining a mandamus to the Secretary of the Interior, directing him to issue a patent for coal lands applied for by the present respondent, upon payment of the purchase price.

*Solicitor General Mitchell,* with whom *Messrs. E. O. Patterson,* Solicitor, Department of the Interior, and *O. H. Graves,* Assistant to the Solicitor, were on the brief, for petitioner.

*Mr. Walter Edmund Burke* for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent's intestate brought suit in the Supreme Court of the District of Columbia for a mandatory injunction compelling the Secretary of the Interior to vacate his decision rejecting an application under R. S. § 2347 for the purchase of certain coal lands included in

318°—28——36

the school-land grant to Utah, and directing that a patent issue. The case was heard on bill and answer from which it appears that the land in question, is part of section 32 in a particular township in Utah. Section 32 of each township was included in the school-land grant to the state of Utah under the Enabling Act of July 16, 1894, c. 138, 28 Stat. 107, 109, which became effective on the admission of Utah into the Union January 4, 1896. But the grant did not include any land that was known to be mineral. *United States* v. *Sweet*, 245 U. S. 563. In the official government survey the land in question was reported by the surveyor as non-mineral. In May, 1902, the state sold the lands and the purchaser later conveyed them to the Pleasant Valley Coal Company which has since appeared as the record owner and paid taxes on them. On February 4, 1918, Braffet, respondent's intestate, filed in the local land office at Salt Lake City his application to purchase the lands as coal lands. At this time and for many years before, the settled practice of the Land Office, under Rule 1 of the Regulations of March 6, 1903, 32 L. D. 39, had been to treat applications for purchase, under the mining laws, of parts of a section designated in the school-land grant, where made after the date when the grant would attach if the land was non-mineral, as a contest of the state's right.

Braffet's application was so treated. The state was cited and answered, protesting the application and setting up that the lands were not known coal lands on the date of the grant to it. The coal company intervened and made like answer. Braffet assumed the burden of the contest and offered evidence. At the conclusion of his case motions of the state and the coal company to dismiss were granted without the submission of testimony in their behalf. Braffet appealed to the Commissioner of the General Land Office, who reversed the action of the local land office and without affording the state or the

coal company opportunity to offer evidence, directed that
Braffet's contest be sustained and the protest of the state
dismissed. The state and the coal company appealed to
the Secretary who, July 31, 1922, held that the local office
had erred in dismissing the contest for insufficiency of
evidence, and that the Commissioner had also erred in
disposing of the case without affording the state and the
coal company an opportunity to offer evidence. He re-
manded the cause to the local office to proceed with the
contest. 49 L. D. 212.

In the meantime the Leasing Act of February 25, 1920,
c. 85, 41 Stat. 437, 438, 451, had been enacted, authorizing
the disposition of certain classes of mineral lands of the
United States, including coal lands, by the Secretary of
the Interior only by lease. Acting under this statute
the Secretary, on June 4, 1923, executed a lease of the
land to the coal company which, in contemplation of
this action, had waived its claim under the state grant,
expressly stipulating that its waiver was on condition
that the lease be granted. The state in the meantime
had withdrawn its protest to Braffet's application, with-
out prejudice to the claim of the company, setting up
that it had no beneficial interest in the land, by reason
of its own conveyance to the coal company's grantor.

Braffet's contest was dismissed January 8, 1924, and
his application to reopen it was denied on March 24,
1924. Later, the present suit was brought. The de-
cree of the Supreme Court of the District directed the
Secretary to vacate his decision remanding the proceed-
ings to the local office, and to issue a patent on payment
of the purchase price. The Court of Appeals modified the
judgment in respects not now material, but held that
Braffet's application was valid and that the Secretary
should be directed to issue a patent. 57 App. D. C. 192.

The principal question presented is whether, by the ap-
plication to purchase and by bringing and conducting the

contest, Braffet acquired rights which could not be or were not extinguished by the action taken by the Secretary under the Leasing Act. In giving an affirmative answer the Court of Appeals thought that as the Secretary had ruled that Braffet had made a prima facie case before the Department, the abandonment by the State and the coal company of the protest and their assent that the mineral lease be given were equivalent to the allowance of his claim, and that the Secretary under the Leasing Act was without power to defeat the claim since it had then ripened into a vested right.

After the Leasing Act, coal lands of the United States were subject to disposition by the Secretary only by lease "except [under § 37] as to valid claims existent at date of the passage of this Act and thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws, including discovery." Braffet's application was for the purchase of coal lands and not for a lease. It was not entitled to consideration under the Leasing Act unless saved by the exception as a "valid claim" existent at the date of the Act.

R. S. § 2347, under which the application was made gives the "right to enter . . . vacant coal lands of the United States not otherwise appropriated or reserved by competent authority." The departmental Regulations of March 6, 1903, 32 L. D. 39, withdrew school lands from entry with direction to local officers to treat applications for them in the same manner as contests. Rule 1 reads:

"When a school section is identified by the government survey and no claim is at the date when the right of the State would attach, if at all, asserted thereto under the mining or other public-land laws, the presumption arises that the title to the land has passed to the State, but this presumption may be overcome by the submission of a satisfactory showing to the contrary. Applications pre-

sented under the mining laws covering parts of a school section will be disposed of in the same manner as other contest cases."

This rule has never been expressly repealed. The Department has consistently held that it is applicable to school lands, *Charles L. Ostenfeldt*, 41 L. D. 265; *Santa Fe Pac. R. R.* v. *California*, 34 L. D. 12, and that applications for tracts embraced in an entry of record give rise to no rights until the entry has been cancelled of record, *Walker* v. *Snider*, 19 L. D. 467; *Stewart* v. *Peterson*, 28 L. D. 515, 519; *Hiram M. Hamilton*, 38 L. D. 597.

The rule is an appropriate application to school-land grants of the established policy of the Department to treat as excluded from entry or preemption lands which may, in the execution of the laws of Congress, fall within the claims of others, a policy which avoids confusion and conflicting claims. *Shepley* v. *Cowan*, 91 U. S. 330; *Holt* v. *Murphy*, 207 U. S. 407, 414.

Under both R. S. § 2347, conferring the right to purchase only " vacant coal lands of the United States not otherwise appropriated or reserved by competent authority," and Rule 1, *supra*, as interpreted and applied by the Department, we think that Braffet, by his application, acquired no legal status other than that of a contestant, and that this amounted to no more than a privilege of seeking to restore the lands to entry. The pending contest presented no obstacle to the withdrawal of the privilege by the United States. Compare *Shepley* v. *Cowan, supra; Frisbie* v. *Whitney*, 9 Wall. 187; *The Yosemite Valley Case*, 15 Wall. 77; *Campbell* v. *Wade*, 132 U. S. 34, 37; *United States* v. *Norton*, 19 F. (2d) 836; *Alice M. Reason*, 36 L. D. 279, 280–1; *Instructions*, 40 L. D. 415, 416, 417. Plainly it was withdrawn by the provisions of the Leasing Act, already quoted, unless saved by the exception " in favor of valid claims existent at the date of passage." Even if so saved the land would have been

restored to entry only if the contest were determined in respondent's favor, which was not done.

But we think that the exception in § 37 was not intended to save so nebulous and insubstantial a claim as that of the privilege of contesting the presumptive title of the state. The construction argued for would tend to defeat the purpose of the Leasing Act which was to prevent the sale of the mineral lands of the United States where substantial rights had not been acquired in them, and to permit their exploitation only by lessees paying royalties to the Government. The reference in § 37 to valid claims " thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws, including discovery " at least suggests that they embrace only such substantial claims as would on compliance with the provisions of the former law ripen into ownership; such claims as might be acquired under the mining laws by location, possession and development which, if continued to discovery and entry, would entitle the claimant to a patent. That such was the purpose is established by the Congressional debates. 58 Cong. Rec. pt. 5, pp. 4577–4585. 66th Cong. 1st Sess.

Here the claim of the contestant was not one which would necessarily ever come to fruition in ownership for, if successful, he would not have been entitled to entry or patent in preference to any other citizen desiring to apply for the land. In the absence of a statute or a departmental regulation securing it, there is no preference right. Compare *Hartman* v. *Warren,* 76 Fed. 157; *Howell* v. *Sappington,* 165 Fed. 944; *Charles L. Ostenfeldt,* 41 L. D. 265, 267. As the provisions of the Leasing Act precluded the contestant, if successful, from purchasing the lands in question as coal lands, his contest was rightly dismissed, and it becomes unnecessary to consider the effect upon the proceedings in the Department of the withdrawal of the State's protest.

Whether if the situation were otherwise the Secretary could by a mandatory injunction be directed to issue a patent, we need not consider. No decision of this Court has given sanction to such a direction.

*Reversed.*