**SKEEN v. LYNCH et al.**

No. 235.

Circuit Court of Appeals, Tenth Circuit.
March 30, 1931.

Tom W. Neal, of Lovington, N. M., for appellant.

J. M. Hervey, of Roswell, N. M. (Edward M. Freeman, of New York City, Reid, Hervey, Dow & Hill and Emmett Patton, all of Roswell, N. M., and G. U. McCrary, of Artesia, N. M., on the brief), for appellees.

Before LEWIS and COTTERAL, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

The bill in this suit, dismissed on motion, contains two counts. The first alleges that appellant Skeen, plaintiff below, entered on February 8, 1924 for agricultural purposes and his homestead a described 640 acres of land in Lea County, New Mexico; that at the time of entry no part of the land had been withdrawn from entry as valuable for coal or gas, or as being on the structure of a producing oil and gas field, but had been classified as stockraising lands; that appellant's said entry was made under the Act of December 29, 1916 (39 Stat. 862 [43 USCA § 291 et seq.]), which provided that all the coal and other minerals shall be reserved to the United States; that plaintiff received on March 11, 1929 a certificate of payment in full for said land, and patent therefor issued to him on June 22, 1929. The patent, attached as an exhibit, contains this: "Excepting and reserving, however, to the United States all the coal and other minerals in the lands so entered and patented, together with the right to prospect for, mine, and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862)." It is then alleged that plaintiff is the owner of the water, oil and gas in and under said land, and that "said reservation in the said Act of Congress only reserved to the United States the 'coal and other minerals' of a solid and similar nature to coal", and did not reserve the oil and gas; that the defendants are claiming some interest or title to and right to produce and appropriate the water, oil and gas from said lands adverse to the title of plaintiff, which claims constitute a cloud on plaintiff's title. There is a prayer that plaintiff's title to the water, oil and gas in and under said lands be quieted and set at rest, and that defendants be perpetually enjoined from claiming any interest or right in the production of, or right to produce or take the water, oil or gas under said lands.

The second count alleges again plaintiff's entry and the issuance of patent to him; that plaintiff was by law the owner of and possessed of a preference right above all others to prospect for and produce oil and gas from said land; that defendant Lynch, with full knowledge of plaintiff's preference rights, applied, after plaintiff had entered the land, to the Land Department for a permit to prospect for and drill for oil and gas on said 640 acres, and the Secretary of the Interior in May, 1926 issued to her such permit and in event of discovery she was to receive an oil and gas lease from the United States; that plaintiff had no knowledge of the application for said permit nor of its issuance until long thereafter; that the Secretary in issuing said permit erred in his construction of the Act of February 25, 1920 (41 Stat. 437) in holding that plaintiff had no preference right to a permit and lease upon said land and in issuing said permit to Beulah V. Lynch without notice to him, and he was thereby deprived of his said right without due process of law. That Beulah V. Lynch and her co-defendants, to whom she had assigned some right or interest in and to said permit and a prospective oil and gas lease on said lands in the event of discovery, have thereby constituted themselves trustees for plaintiff of the rights which they obtained and expect to procure under said permit; that all of said assigns took their assignments with knowledge of plaintiff's preference right. The prayer on this count, in the alternative and in the event plaintiff is denied relief on the first count, is: "That the title to said permit covering the lands described herein, so issued to the said Beulah V. Lynch, be decreed to be in the plaintiff herein, and that the title therein and thereto be forever quieted in this plaintiff, and that the defendants and each of them be, upon the final hearing hereof, forever restrained and enjoined from claiming or asserting any right, title or interest therein or thereto adverse to the rights of this plaintiff."

As to the first cause of action, the court is of the opinion that the United States is an indispensable party. The plaintiff asserts title to the oil and gas under the said 640 acres. The United States in its patent conveying the lands to appellant excepted and reserved to itself "all the coal and other minerals in the land so entered and patented, together with the right to prospect for, mine,

and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862)"; and in its certificate of final proof and payment issued to plaintiff March 11, 1929, this was contained: "Patent to contain reservation of coal and other minerals, and conditions and limitations as provided by Act of December 29, 1916 (39 Stat. 862)." The bill shows that defendants named claim no interest in the oil and gas other than as permittees and prospective lessees of the United States. The interest of the United States in the subject matter in litigation is not less obvious and substantial than it was in the case of Louisiana v. Garfield, 211 U. S. 70, 29 S. Ct. 31, 53 L. Ed. 92, in which it was held to be an indispensable party. The bill discloses the claim of ownership of the oil and gas made by the United States. Section 9 of the Stockraising Homestead Act (39 Stat. 862 [43 USCA § 299]) expressly provides that all the coal and other minerals in the land so entered shall be reserved to the United States, and that all entries and patents shall so state, and that there shall also be reserved the right to prospect for, mine and remove the minerals reserved, and that they shall be disposed of by the United States in accordance with the coal and mineral land laws. A decree for plaintiff on the first count would be a cloud on the title of the United States, and its permittee and prospective lessee would be subject to ouster if she continued to attorn to the United States. In New Mexico v. Lane, 243 U. S. 52, 37 S. Ct. 348, 61 L. Ed. 588, the state claimed title to forty acres under Congressional grant and prayed that it be adjudged the owner. A certificate of purchase of the forty acres as coal land had been issued to one Keepers by the United States. Held, Keepers was an indispensable party. In California v. Southern Pacific Co., 157 U. S. 229, 15 S. Ct. 591, 599, 39 L. Ed. 683, it was held that "if the rights of those not before the court are inseparably connected with the claim of the parties litigant, so that a final decision cannot be made between them without affecting the rights of the absent parties," the court cannot proceed with the adjudication in their absence; that "the familiar rule in equity, * * * is the doing of complete justice by deciding upon and settling the rights of all persons materially interested in the subject of the suit, to which end such persons should be made parties." See also American T. & S. Bank v. Scobee, 29 N. M. 436, 224 P. 788. Story's Equity Pleadings (10th Ed.) § 138: "In the next place, an interest of the absent parties in the subject-matter, ex directo, which may be injuriously affected, is not indispensable to the operation of the general rule; for, if the defendants actually before the court may be subjected to undue inconvenience, or to danger of loss, or to future litigation, or to a liability under the decree, more extensive and direct, than if the absent parties were before the court, that of itself, will, in many cases, as we shall presently see, furnish a sufficient ground to enforce the rule of making the absent persons parties." So much for the first count. The motion to dismiss it on the ground that the United States was an indispensable party was well taken.

The second count goes on the assumption that the oil and gas was reserved to the United States by the Act of December 29, 1916 and the patent in accordance therewith; and then alleging that plaintiff had a preference right to a prospecting permit and lease under section 20 of the leasing act of February 25, 1920 (41 Stat. 445 [30 USCA § 229]), he seeks to hold Beulah V. Lynch and her assigns as his trustees ex maleficio.

We accept the assumed fact as irrefutable. The legislative history of the Stockraising Homestead Act when it was reported for passage including the discussion that followed relevant to this subject leave us no room to doubt that it was the purpose of Congress in the use of the phrase "all coal and other minerals" to segregate the two estates, the surface for stockraising and agricultural purposes from the mineral estate, and to grant the former to entrymen and to reserve all of the latter to the United States. In that respect the case is well within the rule announced in Work v. Braffet, 276 U. S. 560, 566, 48 S. Ct. 363, 72 L. Ed. 700; United States v. St. Paul, M. & M. Co., 247 U. S. 310, 318, 38 S. Ct. 525, 62 L. Ed. 1130; and United States v. Forty Barrels and Twenty Kegs of Coca-Cola Co., 241 U. S. 265, 281–283, 36 S. Ct. 573, 60 L. Ed. 995.

Appellant relies on the rule that general words may be restrained by particular words —ejusdem generis—to sustain the first count. The functions and limitations of that rule are stated in Danciger v. Cooley, 248 U. S. 319, 326, 39 S. Ct. 119, 63 L. Ed. 266; Cutler v. Kouns, 110 U. S. 720, 728, 4 S. Ct. 274, 28 L. Ed. 305; Mason v. United States, 260 U. S. 545, 554, 43 S. Ct. 200, 67 L. Ed. 396; and Webber v. Chicago, 148 Ill. 313, 36 N. E. 70. But again, immediately following the mineral reservation clause in said act (section 9) is this: "The coal and other mineral de-

posits in such lands shall be subject to disposal by the United States in accordance with the provisions of the coal and mineral land laws in force at the time of such disposal." We can conceive of no reason or purpose for including in that sentence the words "and other mineral" and "and mineral" had it been the intention to reserve only coal and the like,—noscitur a sociis. Had that been the purpose the sentence would have appropriately read: The coal deposits in such lands shall be subject to disposal by the United States in accordance with the provisions of the coal land laws in force at the time of such disposal. In our opinion all mineral in the 640 acres was reserved to the United States.

As to plaintiff's claim of preferential right to the permit and lease,—the Secretary of the Interior has uniformly held that section 20 of the leasing Act of February 25, 1920 was intended to serve a special purpose; that it is a relief section and was based upon claimed equities of those who had gone upon the public domain and made entries under the 160 or 320 acre homestead law, neither of which contained any reservation of minerals, in the belief that they would obtain unrestricted titles; that the entry must have been made prior to February 25, 1920; that it must have been made without reservation of minerals on unwithdrawn lands, not classified as mineral, and not known to be valuable for its mineral deposits at date of entry, and that section 20 had no application to entries of stockraising homesteads made after the leasing act, nor to such entries made prior to the leasing act, because such entries themselves provided for reservation of mineral deposits. See: Charles R. Haupt, 47 Land Dec. 588; Charles R. Haupt, 48 Land Dec. 355; Johnson v. Patten, 49 Land Dec 613; Blakeney v. Womack, 51 Land Dec. 622. The weight to be given to the construction of legislation by administrative officers who are charged with its application, where its provisions are at all in doubt or uncertain, is settled. Their construction of the statute is said to be in the highest degree persuasive if not controlling. United States v. Hammers, 221 U. S. 220, 225, 31 S. Ct. 593, 55 L. Ed. 710. Said section 20 of the leasing act, insofar as pertinent here, reads: "In the case of lands bona fide entered as agricultural, and not withdrawn or classified as mineral at the time of entry, * * * the entryman or patentee, or assigns, where assignment was made prior to January 1, 1918, if the entry has been patented with the mineral right reserved, shall be entitled to a preference right

to a permit and to a lease, as herein provided, in case of discovery. * * *" This entry was not made until four years after the leasing act took effect, and the patent was not issued until nine years thereafter. Sections 13, 14 and 17 of the act (30 USCA §§ 221, 223, 226) contain general provisions for permits and leases by the United States of the mineral reservations. No sound reason is suggested for the inclusion of section 20 in said act unless it was intended to serve a special purpose, and we agree with the views of the Secretary as to the purpose it was to serve. The court did not err in dismissing the second count.

Affirmed.