October 5, 1977

## 77–57  MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

### Impact of Panama Canal Zone Treaty on the Filling of the Vacancy in the Office of the District Judge for the United States District Court for the District of the Canal Zone

I am replying to your inquiry whether and how the current vacancy in the Office of the District Judge for the United States District Court for the District of the Canal Zone should be filled in the light of the proposed Canal Zone Treaty.

The District Judge for the United States District Court for the Canal Zone is appointed for a term of 8 years and serves until his successor is appointed unless the judge is sooner removed by the President for cause. 3 Canal Zone Code, § 5. Under the proposed Panama Canal Treaty, Article XI, 1, 5, the courts of the United States in the Canal Zone will be abolished after the expiration of a period of 30 months following the entry into force of the Treaty.[1] Hence, it is likely that the U.S. District Court for the Canal Zone will be abolished prior to the expiration of his statutory term.[2] In our opinion, the abolition of the district court will automatically terminate the tenure of the judge ap-

---

[1] During that transition period, the jurisdiction of the courts will be diminished because they will be unable to take any new cases of a private civil nature; they will, however, retain full jurisdiction to dispose of cases instituted and pending prior to the entry into force of the Treaty. Article XI, 6. It also appears that the jurisdiction of the United States courts in the Canal Zone in criminal cases during the transitional period will be narrower than it is now. Article XI, 2.

[2] Article X, 7, of the Treaty contains certain provisions designed to protect persons who are displaced as the result of the discontinuance of United States activities in the Canal Zone. None of these, however, appears to be applicable. Reemployment by the United States is limited to persons employed by the Panama Canal Company or the Canal Zone Government. The district judge does not come within either category. The Treaty also provides that persons previously employed in activities for which the Republic of Panama assumes responsibility as the result of this Treaty "will be continued in their employment to the *maximum extent feasible* by the Republic of Panama." [Emphasis added.] It is safe to assume that the Republic of Panama will not consider it "feasible" to continue the United States district judge in office when it becomes fully responsible for the judicial system in the Canal Zone.

pointed to that court. We believe, however, that it would be preferable for legislation implementing the Treaty to provide, as in the Alaska and Hawaii Statehood Acts,[3] that the tenure of the district judge shall terminate upon the abolition of his court.[4]

The question whether the tenure of a judge outlasts the existence of his court is not new. It first became prominent in 1802 at the time of the repeal of the Circuit Court Act passed toward the end of the Adams Administration. At that time Congress took the position that the abolition of the circuit courts terminated the tenures of the circuit judges even though they held commissions during good behavior. The constitutionality of that action, however, was never judicially tested because at that time the United States had not waived its immunity from suit in such cases. *See* Frankfurter and Landis, "The Business of the Supreme Court," pp. 26–28, fn. 75. Congress apparently was aware of the vulnerability of its position. Thereafter courts whose judges had lifetime tenure were as a rule abolished only while the offices were vacant.

The effect of the abolition of a court on the tenure of its judges arose regularly when a territory became admitted as a State, because the admission had the effect of abolishing the territorial courts even if the Act of admission did not expressly so provide. *Benner* v. *Porter*, 50 U.S. (9 How.) 235 (1850). As far as we have been able to determine, only the Acts admitting Alaska and Hawaii dealt specifically with the problem here at hand. Those statutes provided expressly for the term of the territorial courts and that the tenure of the territorial judges should simultaneously come to an end. We have been informed by the Administrative Office of United States Courts that the territorial judges in those two States did not receive any compensation following the abolition of the territorial courts, other than their retirement benefits, if any, which had been specifically preserved by the Acts of admission.[5]

The earlier Statehood Acts appear to have been silent on both issues, *i.e.*, the abolition of territorial courts and the termination of the tenure of the territorial judges.[6] We have not been able to discover the actual practice that prevailed in those situations. The last admissions antedating those of Alaska and Hawaii occurred in 1912 (Arizona and New Mexico), and the Administrative Office of United States Courts, established only in 1939, has no pertinent records.

We suspect, but cannot establish definitively, that when, upon the admission of a new State, the territorial courts located in it were

---

[3] Section 18 of the Alaska Statehood Act and § 9(a) of the Hawaii Statehood Act.

[4] An appointment of the judge for a period to terminate 30 months after the entry into force of the Panama Canal Treaty would not solve the problem because the effect of an officer's appointment is governed by the statute under which he is appointed and not by the language of the nomination or of the commission. *Quackenbush* v. *United States*, 177 U.S. 20, 27 (1900); 2 Op. Att'y. Gen. 410, 412 (1831); 16 Op. Att'y. Gen. 656 (1880).

[5] Alaska Statehood Act, § 12; Hawaii Statehood Act, § 14.

[6] The Acts of admission of New Mexico, Oklahoma, and Wyoming contained virtually identical standard clauses, which were silent on this issue.

abolished, the territorial judges simultaneously lost their judicial commissions and their right to compensation. Any claim of a territorial judge for his compensation after the termination of his court presumably would have resulted in his removal.[7]

There are several grounds for rationalizing the limited tenure of territorial judges. They are, however, inconclusive on the point here involved. *Glidden* v. *Zdanok,* 370 U.S. 530, 545–547 (1962), explains that the territorial courts were staffed with judges who did not have life tenure, because, in view of the temporary nature of the territorial status, it would have been impractical to invest the judges of those transitional courts with a tenure "which Congress could not put to use and that the exigencies of the territories did not require" (at 547). This passage is equivocal on the issue here involved. It might merely mean that by giving the territorial judges limited tenure, Congress could reduce the Government's financial burden by having to pay the judges after the admission of the State only for the duration of their unexpired terms—until recently usually 4 years—rather than for life.

Moore's Federal Practice Vol. I, § 0.4[1], points out (63–64) that legislative courts such as territorial courts are exempt from the requirements of Article III, § 1, of the Constitution that judges shall hold their offices during good behavior and that their compensation cannot be diminished while in office. This passage also is silent as to whether the abolition of a territorial court results in the termination of the judge's tenure and of his right to compensation in the absence of a specific statutory provision to that effect. It does, however, support the constitutionality of legislation, similar to the Alaska and Hawaii Statehood Acts, which provide expressly that upon the abolition of the court the judge's tenure should come to an end even if his statutory term had not expired at that time.

We therefore conclude that the tenure of a Canal Zone judge terminates when his court is abolished even if his statutory term has not expired at that time. In order, however, to eliminate any possible doubt on this issue and to obviate any future dispute or litigation on the issue, we recommend that a provision to that effect be included in legislation implementing the Treaty.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[7] *McAllister* v. *United States,* 141 U.S. 174 (1891), confirmed the President's unlimited power to remove territorial judges. That power was questioned only in 1926 (*Myers* v. *United States,* 272 U.S. 52, 157–158), and denied in *Humphrey's Executor* v. *United States,* 295 U.S. 602, 626–627, 629 (1935).