**GRANITE STATE CHAPTER, Association of Civilian Technicians, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 98–1810.

United States Court of Appeals, First Circuit.

Heard Jan. 8, 1999.

Decided April 1, 1999.

Daniel M. Schember, with whom Gaffney & Schember, P.C. was on brief, for petitioner.

Gina A. Taylor on brief, for National Federation of Federal Employees, amicus curiae.

Judith A. Hagley, Attorney, Federal Labor Relations Authority, with whom David M. Smith, Solicitor, and William R. Tobey, Deputy Solicitor, Federal Labor Relations Authority, were on brief, for respondent.

Before TORRUELLA, Chief Judge,
ALDRICH and CUDAHY,* Senior Circuit Judges.

CUDAHY, Senior Circuit Judge.

New Hampshire takes politics seriously. Every four years, presidential hopefuls coffee-and-chili their way through the Granite State, giving New Hampshirites unparalleled personal access to the political elite. The local chapter of the Association of Civilian Technicians (the Union) apparently wanted a piece of this action and, during collective bargaining negotiations with the New Hampshire National Guard in 1996, submitted a proposal which would have allowed union representatives to lobby these and other politicians:

> Association officials will be granted not to exceed two days annually, official time to represent the bargaining unit by visiting, phoning, and writing to elected representatives in support of or opposition to pending desired legislation which would impact the working conditions of employees represented by the [union].

The Union cited 5 U.S.C. §§ 7102(1) and 7131(d) (effective Jan. 11, 1979) as support for their proposal. Section 7102(1) provides in pertinent part that unionized government employees have the right to act for a labor organization in the capacity of a representative and the right, in that capac-

ity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities.

Section 7131(d), which defines permissible uses of "official time," further provides that any employee:

> in connection with any other matter covered by this chapter ... shall be granted official time in any amount the agency and the [union] agree to be reasonable, necessary, and in the public interest.

The Union claimed these provisions read together guaranteed its representatives a reasonable amount of official time to lobby.

The National Guard refused to bargain over the proposal, also citing statutory support for its decision. Specifically, it argued that pursuant to 5 U.S.C. § 7117(a)(1) its obligation to negotiate did not extend to proposals which violated the law. The Guard contended that the Union's request, if granted, would violate three separate anti-lobbying statutory provisions—sections 8001 and 8015 of the 1996 Department of Defense Appropriations Act, Pub.L. No. 104–61, 109 Stat. 636, 651, 654 (1996) (the Act) and 18 U.S.C. § 1913. The Union filed an unfair labor practice claim, charging failure to bargain in good faith, which the parties submitted to the Federal Labor Relations Authority (the Authority) on stipulated facts.

The Authority dismissed the complaint with one member dissenting. *See Office of the Adjutant General, New Hampshire National Guard*, 54 F.L.R.A. 301 (1998) (slip op.). It first found that the Union's proposal was consistent with both § 1913 [1]

---

* Of the Seventh Circuit, sitting by designation.

1. 18 U.S.C. § 1913 provides in pertinent part: No part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, ... intended or designed to influence in any manner a Member of Con-

gress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress ... but this shall not prevent officers or employees of the United States or of its Departments or agencies from communicating to Members of Congress ... through the proper official channels, requests for legislation or appropriations which they

and § 8001.[2] The Authority did find, however, that the proposal conflicted with § 8015, which provides in pertinent part:

> None of the funds made available by this Act shall be used in any way, directly or indirectly, to influence congressional action on any legislation or appropriation matters pending before the Congress.

The Authority held that the unambiguous and unqualified language of this section barred official-time lobbying by Department of Defense employees in 1996. It also rejected as inapposite the dissenting member's reliance on General Accounting Office (GAO) interpretations of other similar provisions and determined that resort to other indicia of Congressional intent was unnecessary given the clarity of § 8015's language. *See New Hampshire National Guard,* slip op. at 10–13. Because the Union's proposal conflicted with § 8015, the National Guard was under no obligation to negotiate over it, and the Authority therefore dismissed the complaint.

The Union appeals, and, as an initial matter, the parties contest our standard of review. The Union argues that because the Authority has no special competence interpreting Department of Defense appropriations acts, its construction of the Act is due no deference. Review should be de *novo,* the Union concludes. The Authority claims that our review is more limited; we should "respect" its reading of the Act and defer to it so long as it is reasonable. Frequently, the resolution of this standards debate disposes of the substantive issue. Not so here: whatever standard we apply, we reach the conclu-

sion that the Authority's decision was not in error.

■ We begin with the elementary proposition that one Congress is not bound by the decisions of a previous Congress. *See, e.g., Reichelderfer v. Quinn,* 287 U.S. 315, 318, 53 S.Ct. 177, 77 L.Ed. 331 (1932); *Passamaquoddy Tribe v. Maine,* 75 F.3d 784, 789 (1st Cir.1996). Times change, and Congress repeals some laws, adjusts others and passes new legislation to meet the challenges of the day and of its own policy preferences. In most instances, Congress is explicit about its intent to change the law. In other cases, however, Congress is not so clear; the repeal is not explicit. Although repeal by implication is disfavored, especially in instances in which an appropriations bill is claimed to have repealed substantive law, *United States v. Will,* 449 U.S. 200, 221–22, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980), it is not forbidden. *See id.* at 222–24, 101 S.Ct. 471; *Metlife Capital Corp. v. M/V EMILY S.,* 132 F.3d 818, 821–22 (1st Cir.1997). If one Congress clearly and manifestly makes known its intent to supplant an existing law, a court can find repeal by implication. *See, e.g., Metlife Capital,* 132 F.3d at 822. Where, for example, two statutes are in irreconcilable conflict, the later law, in whole or in part, constitutes a repeal of the former. *See id.*

■ This is such a case. The 104th Congress picked its terms carefully, and we must give them their full effect. *See, e.g., BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). It chose unambiguous and un-

---

deem necessary for the efficient conduct of the public business.

In *Army Corps of Engineers,* 52 F.L.R.A. 920 (1997), the Authority had held that § 1913 did not prohibit union representatives from using official time to lobby. Here, because the National Guard did not provide "any new arguments," the Authority held that *Army Corps of Engineers* controlled. *See New Hampshire National Guard,* slip op. at 6–7.

**2.** Section 8001 of the Act provides in pertinent part: "No part of any appropriation

contained in this Act shall be used for publicity or propaganda purposes not authorized by Congress." The Authority focused on the "plain wording" of this provision, which includes an express exception ("not authorized by Congress"), and held that 5 U.S.C. §§ 7102(1) and 7131(d) constituted Congressional authorization for use of appropriated funds to lobby. *See New Hampshire National Guard,* slip op. at 8–9.

qualified language—"none," "in any way," "directly or indirectly." This pleonasm leaves no room for doubt; Congress simply changed its mind. The presence of exceptions in other anti-lobbying provisions, including 18 U.S.C. § 1913 and § 8001 of the Act, only bolsters this conclusion. *See, e.g., United Technologies Corp. v. Browning–Ferris Ind., Inc.*, 33 F.3d 96, 100–101 (1st Cir.1994).

■ Even after some prodding at oral argument, neither the Authority (for reasons we do not fully understand) nor the Union (because it would lose) fully endorsed this conclusion. Instead, the parties bickered over which statute was more specific (and which two should be compared), whether reliance on sources other than the statutory language might compel a different result and whether the case implicated constitutional concerns. These arguments are red herrings. Whether § 8015 is more specific than § 7102—and in one sense it is—is part-and-parcel of the initial textual inquiry. Section 8015's specificity is a clear and manifest expression of Congress's intent to repeal the Union's right to lobby. The Union also argues that Congress was not concerned about *unions* lobbying, pointing to the legislative history of § 8015 and GAO interpretations of similar provisions which suggest that Congress intended § 8015 to bar only *defense contractors* from lobbying the Department for more funds. None of these sources, however, can explain the absence of any qualifications in the clear language of § 8015; Congress plainly did not distinguish between defense contractors and unions consisting of Defense Department employees. And, in any event, we need not consult extrinsic sources when the plain meaning of the statutory language is clear. *See, e.g., Pritzker v. Yari*, 42 F.3d 53, 67 (1st Cir.1994). Finally, the Union's derivative constitutional arguments are unpersuasive.[3]

3. Section 8015 does not in any way affect what Union members can do during their

In 1996, Congress decided that Department of Defense funds should not be used for lobbying and drafted and passed an appropriations act to make this clear. For that fiscal year, § 8015 repealed the Union's right to lobby Congress on official time as otherwise guaranteed by 5 U.S.C. § 7102. Thus, the Union's proposal conflicted with § 8015; the National Guard was under no obligation to negotiate over the proposal; and the Authority's dismissal of the unfair labor practice charge is **AFFIRMED**.