269 F.3d 1119 (D.C. Cir. 2001)
 Association of Civilian Technicians, Tony Kempenich Memorial Chapter 21, Petitioner
v.
Federal Labor Relations Authority, Respondent
 No. 01-1044
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued October 11, 2001
Decided November 9, 2001
 
 On Petition for Review of an Order of the Federal Labor Relations Authority
 Daniel M. Schember argued the cause and filed the briefs for petitioner.
 William E. Persina, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was David M. Smith, Solicitor. William R. Tobey, Deputy Solicitor, entered an appearance.
 Before: Sentelle, Randolph and Garland, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Sentelle.
 Sentelle, Circuit Judge:
 
 
 1
 The Association of Civilian Technicians, Tony Kempenich Memorial Chapter 21 ("the Union") petitions this Court for review of the Federal Labor Relations Authority's ("FLRA" or "Authority") decision in which the FLRA determined that a collective bargaining agreement provision requiring the Department of Defense ("DOD") to permit employees to use "official time" to lobby Congress on pending legislation is contrary to law. In reaching this determination, the Authority concluded that the disputed provision would require the agency to use appropriated funds in a manner prohibited by section 8012 of the Department of Defense Appropriations Act, Pub. L. No. 105-262, 112 Stat. 2279, 2299 (1998) ("Appropriations Act"). Because we agree with the Authority, we deny the petition for review.
 
 I. Background
 
 2
 The Association of Civilian Technicians, a federal employee labor organization, filed a negotiability appeal with the FLRA pursuant to 5 U.S.C. § 7105(a)(2)(E), concerning provisions of a collective bargaining agreement that had been disapproved by the head of the agency (the Department of Defense) as contrary to law under 5 U.S.C. § 7114(c). The disputed provision would grant official time to "Union officials when representing Federal Employees by visiting, phoning and writing to elected representatives in support [of] or opposition to pending or desired legislation which would impact the working conditions of employees represented by the labor organization." Association of Civilian Technicians, Tony Kempenich Memorial Ch. 21, 56 F.L.R.A. 526 (2000).
 
 
 3
 The Union argues that sections 7131 and 7102 of the Federal Service Labor-Management Relations Act (the collective bargaining laws) mandate inclusion of this provision. 5 U.S.C. §§ 7102, 7131. Section 7131 governs the grant of "official time," which allows employees performing union representation functions to be paid as if they were at work, without being charged for annual leave. Under that section, union officials may be granted "official time" for a variety of reasons, including those "in connection with any other matter covered by [the collective bargaining laws]," so long as such time is "reasonable, necessary, and in the public interest." Id. at § 7131(d). Section 7102(1) provides that employees, acting in their union representational capacity, have the right to present the views of their labor organization to Congress. The FLRA has read these sections together to mean that union representatives may receive official time for lobbying Congress in matters concerning their working conditions. See, e.g., National Fed'n of Fed. Employees Local 259, 52 F.L.R.A. 920, 932-33 (1997).
 
 
 4
 In this case, however, the agency contends, and the Authority agrees, that section 8012 of the Appropriations Act prohibits this application of the collective bargaining laws, at least with respect to DOD employees. As the Authority held in New Hampshire Nat'l Guard, 54 F.L.R.A. 301, 310 (1998), aff'd sub nom. Granite State Chapter, Ass'n of Civilian Technicians v. FLRA, 173 F.3d 25 (1st Cir. 1999), the authorization in § 7131(d) to negotiate for official time, as with bargaining on any other matter under the statute, is contingent on the bargaining proposal being consistent with applicable laws, rules, and regulations. See National Fed'n of Fed. Employees Local 2015, 41 F.L.R.A. 1158, 1185 (1991) ("Additionally, official time may be granted for a variety of matters and parties may negotiate under section 7131(d) for official time, as long as it is otherwise consistent with the Statute and other applicable laws and regulations"); American Fed'n of Gov't Employees, Nat'l Council of Field Labor Locals, 39 F.L.R.A. 546, 553 (1991) (same). Section 8012 of the Appropriations Act provides: "None of the funds made available by this Act shall be used in any way, directly or indirectly, to influence congressional action on any legislation or appropriation matters pending before the Congress." Thus, the Authority concluded that the Appropriations Act precluded, as a matter of law, the granting of official time for lobbying Congress on pending matters, though not non-pending, desired, legislation. See 56 F.L.R.A. at 529. In reaching this decision, the FLRA relied on decisions of the First and Ninth Circuits in Granite State Chapter, Association of Civilian Technicians v. FLRA, 173 F.3d 25 (1st Cir. 1999) ("Granite State"), and Association of Civilian Technicians, Silver Barons Chapter v. FLRA, 200 F.3d 590 (9th Cir. 2000) ("Silver Barons"), which addressed virtually identical collective bargaining provisions and identical DOD appropriations act language from previous years. The Authority rejected the union's argument that similar collective bargaining agreement provisions were held to be consistent with other anti-lobbying laws, including 18 U.S.C. § 1913, and section 8001 of the Appropriations Act. The FLRA observed that "[m]ost of the Union's arguments presented in this case have been considered and rejected in prior decisions." Specifically, the Authority cited its prior decision in New Hampshire Nat'l Guard, 54 F.L.R.A. at 310-11, in which the FLRA noted that section 8012 and its predecessors did not contain the same exceptions to the lobbying ban as do 18 U.S.C. § 1913 and Appropriations Act § 8001. Rather, section 8012 and its predecessors contain an absolute ban on using appropriated funds for lobbying.
 
 
 5
 Further, the FLRA held that section 8012 was more specific in scope than 5 U.S.C. § 7131(d), and thus rejected the argument that the right to official time prevails as more specific than the prohibition against using "funds made available" for lobbying. It rejected the union's argument that official time was indistinguishable from paid leave under section 8012, and that the agency's interpretation would necessarily prohibit lobbying while on paid leave, potentially in violation of the First Amendment. Instead, the FLRA concluded, as it had previously held in Association of Civilian Technicians, Old Hickory Chapter and U.S. Dep't of Defense, North Carolina Nat'l Guard Bureau, 55 F.L.R.A. 811 (1999) ("North Carolina Guard"), that official time and annual leave were distinguishable. Finally, the FLRA also rejected the union's argument that its previous interpretation of the forerunner provisions to 8012 was " 'implausible' " given Congress's rejection of legislation that would have banned lobbying on official time for all federal employees. 56 F.L.R.A. at 529. Rather, the FLRA observed that Congress had carved out special treatment for DOD employees through the DOD Appropriations Act. Id.
 
 
 6
 On motion for reconsideration, the FLRA affirmed its decision that disapproval of the provision of the collective bargaining agreement applying to pending legislation was proper. 56 F.L.R.A. 947 (2000). The Union sought review in this Court.
 
 II. Analysis
 
 7
 "In reviewing the FLRA's interpretation of its own enabling statute, we are mindful that we owe great deference to the expertise of the Authority as it 'exercises its "special function of applying the general provisions of the Act to the complexities" of federal labor relations.' " NLRB Union, Local 6 v. FLRA, 842 F.2d 483, 486 (D.C. Cir. 1988) (quoting Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97 (1983)). Were we reviewing the Authority's interpretation of the Federal Service Labor Management Relations Act, we would review that interpretation deferentially under the standard set forth in Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984). Here, however, we are also faced with the FLRA's interpretation of the Department of Defense Appropriations Act, a statute not committed to the Authority's administration. In general, this Court does not defer to the FLRA's interpretation of a statute not committed to the Authority's administration, but reviews such purely legal questions de novo. See Social Sec. Admin. v. FLRA, 201 F.3d 465, 471 (D.C. Cir. 2000). We have reviewed the Authority's interpretation of the Appropriations Act under this de novo standard.
 
 
 8
 Congress expressed a clear intent to prohibit the use "in any way" of "funds made available by the [DOD Appropriations] Act" to "influence congressional action on any legislation or appropriation matters pending before the Congress." Appropriations Act § 8012 (emphasis added). Twice before, our sister circuits have addressed this very issue, involving the same labor union, similar, if not identical bargaining provision language, and identical predecessor DOD appropriations acts. Granite State, 173 F.3d at 27-28; Silver Barons, 200 F.3d at 592-93. And unsurprisingly, twice before, our sister circuits have affirmed the Authority's determination that the disputed provision was contrary to law and therefore nonnegotiable. Perhaps the Union believed the third time would be the charm. It is not. Nothing has changed--not the crux of the provision in dispute, and not the appropriations act language, and therefore we see no reason to depart from our sister circuits' good company. The Appropriations Act prohibits the disputed provision because, as the FLRA has had several occasions to reiterate, official time may only be granted to the extent that it is consistent with all "applicable laws and regulations." E.g., NFFE Local 2015, 41 F.L.R.A. at 1185. Here the granting of official time is not consistent with the Appropriations Act. Hardly more needs to be said.
 
 
 9
 The Union also raises a constitutional argument which we dispense with just as summarily. The Union contends that the FLRA's treatment of the Appropriations Act raises "serious" First Amendment concerns because it leads to the "unacceptable conclusion that employee activities on paid annual leave constitute use of appropriated funds, and that § 8012 therefore prohibits employees from visiting Members of Congress while on annual leave." However, this "unacceptable conclusion" is predicated on there being no difference between annual leave and official time. That is simply not so. The Authority has reasonably distinguished between official time and paid annual leave. See North Carolina Guard, 55 F.L.R.A. at 813 (setting out the "critical distinction" between employee use of official time and annual leave). The collective bargaining laws impose restrictions on the use of official time that are not applicable to the use of paid annual leave. Official time is a "distinct third category of time," id., and unlike annual leave, is considered to be "hours of work." 5 C.F.R. § 551.424(b) (2001). Annual leave is compensation for work performed at other times. This First Amendment argument is a red herring. Section 8012, like its predecessors, "does not in any way affect what Union members can do during their annual leave." Granite State, 173 F.3d at 28 n.3.
 
 
 10
 Finally, at oral argument, the question arose whether this interpretation of the Appropriations Act would affect lobbying by DOD officials (i.e., the Secretary of Defense or other agency "management") in their official capacity on behalf of the Department and the Executive Branch. Because this issue is not before us, rather only a union's use of "official time," we need not address it, though we do note that applying section 8012 to DOD officials in their official capacity would raise constitutional separation of powers concerns not implicated here. That question would also require us to inquire into longstanding practices of DOD officials in lobbying Congress, to determine whether their actions have placed a "gloss" on Congress's action in enacting section 8012. See, e.g., FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33, 137 (2000); Cannon v. University of Chicago, 441 U.S. 677, 696-99 (1979). The agency's continued lobbying of Congress in the presence of recurring appropriations act provisions such as section 8012 provides additional background for interpreting such sections not relevant to the case before us.
 
 III. Conclusion
 
 11
 Because we agree with the Authority that section 8012 of the Appropriations Act renders the disputed provision contrary to law, we deny the petition for review.