**UNITED STATES of America and Peter N. Kirsanow, in his official capacity as Member,**

**United States Commission on Civil Rights, Appellants**

**v.**

**Victoria WILSON, et al., Appellees**

**No. 02–5047.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 1, 2002.

Decided May 9, 2002.

---

348

Gregory G. Katsas, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellants. With him on the brief were Roscoe C. Howard Jr., U.S. Attorney, Douglas N. Letter, Jacob M. Lewis and Ara B. Gershengorn, Attorneys, U.S. Department of Justice.

Leon Friedman and Theodore V. Wells Jr. argued the cause for appellees. With them on the brief were Julia Tarver, Geoffrey F. Aronow and Paul S. Mandell.

Before: SENTELLE, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

On January 13, 2000, President Clinton appointed appellee Victoria Wilson to the United States Commission on Civil Rights under a commission expressly stating that the appointment was "for the remainder of the term expiring November 29, 2001," left vacant by the death in office of a prior member. After November 29, 2001, President Bush, treating Wilson's commission as having expired on that date, appointed appellant Peter Kirsanow to succeed her. At the next meeting of the Commission, that body recognized Wilson as a continuing member on her assertion that she was entitled to a full six-year term on the Commission running from January 13, 2000, to January 12, 2006. The United States and Kirsanow filed this action seeking a declaratory judgment that Wilson's term had expired and that Kirsanow is now a member of the Commission. The District Court granted summary judgment in favor of Wilson. The United States and Kirsanow appealed. Because we agree with appellants that Wilson's term had expired, we reverse the District Court and remand with instructions for it to enter summary judgment for the appellants.

## I. Background

The United States Commission on Civil Rights ("the Commission") is charged with investigating allegations of deprivation of voting rights on the basis of "color, race, religion, sex, age, disability, or national origin." 42 U.S.C. § 1975a(a)(1). In addition the Commission is empowered to conduct studies and disseminate information relating to discrimination. *Id.* § 1975a(a)(2). The Commission's functions are purely investigatory and advisory–it has neither the power to enforce federal law, nor to promulgate any rules with the force of law. *See Hannah v. Larche,* 363 U.S. 420, 441, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960); *cf. United States v. Mead Corp.,* 533 U.S. 218, 221, 121 S.Ct. 2164, 2168, 150 L.Ed.2d 292 (2001).

The Commission was first created in 1957, and as originally established was composed of six members serving open-ended terms at the pleasure of the President. *See* Pub.L. No. 85–315 § 101(b), 71 Stat. 634 (1957). Congress reauthorized and reorganized the Commission in 1983 by expanding it from six to eight members, providing that not more than four of the members could at any one time be from the same party, dividing the appointment power between the President and Congress, establishing that the President could only remove members for neglect of duty or malfeasance, and staggering the terms of the Commissioners. Specifically, the 1983 Act stated that the "term of office

of each member of the Commission shall be six years; except that (A) members first taking office shall serve as designated by the President, subject to [provisions staggering the initial appointments], and (B) any member appointed to fill a vacancy shall serve for the remainder of the term for which his predecessor was appointed." Pub.L. No. 98–183 § 2(b)(2), 97 Stat. 1301 (1983) ("the 1983 Act"). The staggering provisions created two groups of four commissioners each. The first group would serve for three years, at which point their successors would be appointed to six-year terms. The second group would serve for six years from the outset. *See id.* § 2(b)(3). Under this structure, the terms of office would be regularly staggered with half of them expiring every three years. The 1983 Act provided for the Commission to expire in 1989. Nonetheless the Commission continued to operate via the process of annual appropriations until reauthorized. In 1994 the Commission was formally reauthorized. Pub.L. No. 103–419, 108 Stat. 4338 (1994) ("the 1994 Act"). This Act has been dubbed an effort to "more concisely rewrite[ ] the 1983 [Act]." H.R.Rep. No. 103–775, at 4, *reprinted in* 1994 U.S.C.C.A.N. 3532, 3533 (1994). Like the 1983 Act, the 1994 Act provides that "[t]he term of office of each member of the Commission shall be 6 years." 42 U.S.C. § 1975(c). However, instead of the initial staggering provisions that followed in the 1983 Act, the 1994 Act merely provided: "The term of each member of the Commission in the initial membership of the Commission shall expire on the date such term would have expired as of September 30, 1994." 42 U.S.C. § 1975(c). The Act did not contain any language referring to filling vacancies. The 1994 Act did preserve the division of appointment power between the President and Congress, as well as the requirements for partisan balance, and the limitations on presidential removal of

members. *See* 42 U.S.C. § 1975(b), (e). The 1994 Act provided for the Commission to terminate on September 30, 1996, 42 U.S.C. § 1975d, however, it has again continued to operate pursuant to annual appropriations.

On November 30, 1995, then-President Clinton appointed retired Judge A. Leon Higginbotham to a six-year term as a member of the Commission. His commission stated that his appointment was "for a term expiring November 29, 2001." He replaced Arthur A. Fletcher, whose term expired on November 29, 1995. On December 14, 1998, Judge Higginbotham died in office. To fill this vacancy, President Clinton appointed appellee, Victoria Wilson, to the Commission on January 13, 2000. Her commission expressly states that her appointment was "for the remainder of the term expiring November 29, 2001." Treating Wilson's term as having expired on November 29, President Bush appointed appellant Peter Kirsanow on December 6, 2001, to succeed Wilson on the Commission. Kirsanow was administered the oath of office by D.C. Superior Court Judge Maurice A. Ross; however, the Chair of the Commission, Mary Frances Berry, refused to recognize him or allow him to participate in Commission activities. The Chair instead continued to recognize Wilson as a member of the Commission and allowed her to participate as such.

The United States and Kirsanow (collectively "appellants") filed this action in the United States District Court for the District of Columbia seeking declaratory relief against Wilson. The Commission, Mary Frances Berry (Chair), and Cruz Reynoso (Vice–Chair), moved to intervene. The United States objected that neither the Commission nor its officers in their official capacity have the right to appear in litigation without the permission of the Attorney General, which they had not obtained.

*See* 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party ... is reserved to officers of the Department of Justice, under the direction of the Attorney General."). The district court summarily permitted the intervention. As the United States has not raised this issue on appeal, claiming "it has no practical effect upon the issues presented, since Wilson herself is entitled to defend against the government's complaint," we do not decide whether this intervention was permissible. The parties filed dispositive motions and on February 4, 2002, the district court issued an oral ruling granting Wilson's motion for summary judgment.

The district court concluded that "the 1994 Amendments Act ... does not mandate regularly staggered terms. Rather, its plain language clearly requires that all Commissioners serve six-year terms, regardless of whether, as in this case, their predecessors completed their terms." Thus, under the district court's reading of the statute, Wilson would be entitled to serve a full six years, until January 12, 2006. The district court first found that the language of 42 U.S.C. § 1975(c) "is perfectly clear. It contains no exceptions, qualifications, not for delayed appointments and not for appointments to fill unexpired terms." Second, the court noted that a staggering provision had been proposed, but not adopted by Congress in the 1994 Act. Third, the district court relied on the removal of the staggering and vacancy provisions from the 1983 Act, holding that "when Congress affirmatively deletes language which had been included in pre-existing legislation, then Congress means what it said."

Finally, the court rejected appellants' argument that failure to maintain staggering would undermine "the bipartisan nature of the Commission as well as its integrity and credibility." The court found "nothing to suggest that the absence of such a requirement would frustrate Congress' purpose." Although acknowledging that its ruling would eliminate "uniformly staggered terms," the court opined that its decision would not result in the "complete elimination of all staggering." Even so, the court reasoned that the "staggered term requirement was only one amongst a large constellation of protections that were introduced by the 1983 Act" and "[a]ll of these protections, except staggered terms, remain expressly included in the 1994 Act." The district court concluded that "[i]f Congress believes that the regularly staggered terms should be among these protections, then, of course, it is free to make its intention explicit by including express language in the statute."

The United States and Kirsanow filed this appeal.

## II. Analysis

This case involves a pure legal question of statutory interpretation. Our review of statutory interpretation by a district court is *de novo*. *See, e.g., Butler v. West*, 164 F.3d 634, 639 (D.C.Cir.1999).

### A.

We begin our analysis with the language of the statute. *See, e.g., Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 122 S.Ct. 941, 950, 151 L.Ed.2d 908 (2002). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.' " *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997) (quoting *United States v. Ron Pair*

*Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). In determining the "plainness or ambiguity of statutory language" we refer to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. at 846 (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477, 112 S.Ct. 2589, 2595, 120 L.Ed.2d 379 (1992); *McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991)).

The disputed provision, 42 U.S.C. § 1975(c) provides: "The term of office of each member of the Commission shall be 6 years. The term of each member of the Commission in the initial membership of the Commission shall expire on the date such term would have expired as of September 30, 1994." Appellants contend, contrary to the district court's holding, that the language of the first sentence of § 1975(c) is ambiguous, as the expression "term of office" is subject to at least two plausible interpretations. Appellants concede that one very plausible interpretation of § 1975(c) is that advocated by Wilson and adopted by the district court: Each individual member of the Commission, however appointed, whenever appointed, is entitled to serve a six-year period of time—*i.e.*, the term runs with the person. Under this interpretation, each member of the Commission would receive a six-year term running from the date of her appointment. However, appellants argue that another plausible reading of § 1975(c) is that the first sentence establishes six-year terms of office, beginning and ending on fixed dates, irrespective of whether and when individuals are appointed to fill them. Under this reading, each member of the Commission must be assigned to a fixed, six-year 'slot' of time—*i.e.*, the term runs with the calendar. We agree with appellants that the ambiguity in the first sentence of § 1975(c) permits either of the readings suggested.

■ As Attorney General Brewster explained more than a century ago, "[t]here are two kinds of official terms." *Commissioners of the District of Columbia*, 17 Op. Att'y Gen. 476, 476 (1882). One kind of "term" refers to a *period of personal service*. In that case, "the term is appurtenant to the person." *Id.* Another kind of "term" refers to a *fixed slot of time* to which individual appointees are assigned. There, "the person is appurtenant to the term." *Id.* at 479. In other words, a "term of office" can either run with the person or with the calendar. As an example of the latter, Article II of the Constitution provides that the President shall hold office during a "Term of four Years." U.S. Const. Art. II, § 1, cl.1. Even before enactment of the Twentieth Amendment, which established specific dates for the end of the President's term, it was understood that presidential terms ran four years with the calendar, not four years with the person, regardless of whether an individual assumed office after his predecessor failed to serve out a full term. Thus, contrary to appellees' position, it is *not* clear that the expression "term of office ... shall be 6 years" found in § 1975(c) is unambiguous. Indeed, far from it. The very appointment of Wilson by President Clinton to serve only the remainder of Judge Higginbotham's term demonstrates the ambiguity in the statutory provision calling for six-year "term[s] of office." The district court erred in holding that § 1975(c) unambiguously requires that all Commissioners be appointed for six years, regardless of whether their predecessors completed their terms. This error undermines the district court's judgment, because the remainder of its analysis rests on that erroneous premise as its point of departure.

## B.

Finding that the expression "term of office" in 42 U.S.C. § 1975(c) is ambiguous, we are left to resolve that ambiguity. In resolving the ambiguity, we consider the broader context of § 1975(c) and the structure of the 1994 Act as a whole, as well as the contextual background against which Congress was legislating, including relevant practices of the Executive Branch which presumably informed Congress's decision, prior legislative acts, and historical events. Finally, we explore the policy ramifications of the suggested interpretations of § 1975(c). Each of these considerations leads us to the conclusion that, in enacting the 1994 Act, Congress did not disrupt the staggering of terms of Commission members created in the 1983 Act. Therefore we hold that Wilson was appointed by President Clinton only to fill the unexpired term of Judge Higginbotham, as her commission indicates, and her service as a Commissioner terminated on November 29, 2001. As a result, Kirsanow, having been validly appointed to a vacant seat on the Commission on December 6, 2001, for a term expiring November 29, 2007, and having taken the oath of office, is a member of the United States Commission on Civil Rights.

## 1.

Appellants argue that in order to properly interpret 42 U.S.C. § 1975(c) we must construe both of its two sentences together, rather than as separate and unrelated. Taken together, appellants contend that it is evident that the 1994 Act retained "fixed slots of time to which individual members of the Commission are 'appurtenant.' " The second sentence of 42 U.S.C. § 1975(c) provides that the "term of each member of the Commission in the initial membership of the Commission shall expire on the date such term would have expired as of September 30, 1994," under

the 1983 Act. The "initial membership" of the Commission is defined as "the members of the United States Commission on Civil Rights on September 30, 1994," in other words, the members then serving on the Commission pursuant to the 1983 Act. 42 U.S.C. § 1975(b). Appellants argue that in maintaining the staggering of "initial terms" of the Commission, as inherently provided for by the second sentence of § 1975(c), the 1994 Act perpetuated a self-replicating system of staggered terms. New terms begin based on when the old, staggered terms end. Thus the structure created by Congress in 1983 and preserved in 1994 would automatically endure.

Appellees would have us read the two sentences of § 1975(c) as unrelated. According to appellees, the first sentence alone sets the term of office for six years, and the second sentence simply addresses the transitional issue of the terms of the "initial membership" of the Commission, allowing the existing members of the Commission to finish the terms to which they had been appointed. However, as discussed in Part II.A, *supra*, read alone, the first sentence of § 1975(c) is ambiguous. It is susceptible to an interpretation that each member appointed to the Commission receives six years from her date of appointment, regardless of whether her predecessor left office early, and regardless of whether there was a delay in her appointment. This is the interpretation urged by the intervenors. This interpretation would not only grant Wilson a full six-year term, it would effectively extend the terms of others on the Commission. Yet, an equally plausible interpretation is that terms of the Commissioners run for six years with the calendar. Rather than counting from the date of appointment, the six years of members' term are counted from the expiration of their predecessors' term. This is the common practice of the Executive Branch in making appointments to stag-

gered boards and commissions. *See, e.g.,* Office of Legal Counsel, Department of Justice, Memorandum for the Executive Clerk, "Term of a Member of the Mississippi River Commission," at 1 (May 27, 1999) (observing that "to preserve the staggering required by statute, each member may serve only until the passage of the specified number of years calculated from the expiration of his predecessor's term, even if the member's confirmation and appointment take place after that prior term has expired"). Thus, despite any delay in appointment, a Commissioner's term would expire six years from the day her predecessor's expired. Both are six year terms–the question is which Congress intended here.

 Reading the first sentence of § 1975(c) together with the second sentence, the latter provides an "anchor"– fixed times for terms of Commissioners to expire, based on the "term[s] of each member of the Commission in the initial membership of the Commission." It is "a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000) (quoting *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 1504–05, 103 L.Ed.2d 891 (1989)). Thus, it is a more faithful construction of § 1975(c) to read it as a whole, rather than as containing two unrelated parts. It is the "classic judicial task" of construing related statutory provisions "to 'make sense' in combination." *United States v. Fausto,* 484 U.S. 439, 453, 108 S.Ct. 668, 677, 98 L.Ed.2d 830 (1988). The second sentence does indeed address the transitional issue of the terms of the "initial membership," but in doing so, it also creates a pattern of staggered appointments. Staggered terms must run with the calendar, rather than with the person, to preserve staggering. Thus, taken with the history and background against which Congress was legislating, discussed *infra,* it simply makes more sense to read § 1975(c) as creating terms of office running with the calendar from the date of expiration of a predecessor's term. That being the case, any appointment to fill a vacancy for an unexpired term, such as Ms. Wilson's appointment, must only be for the duration of that unexpired term. For it to be otherwise would disrupt the fixed and staggered six-year terms that run with the calendar.

At oral argument, we raised with counsel for appellees the question of the effect of their proffered interpretation, as adopted by the District Court, on the terms of those members who, like Berry and Reynoso, were appointed to succeed commissioners who had served their full terms, when the successor did not take office until the lapse of some period of time after the termination of the prior commissioner's service. Counsel argued for a two-track application of the statute, contending that when an appointee's predecessor had served out her full term, but there was a delay in the nomination of the new appointee, that new appointee could permissibly serve less than a full six years, because such a discrepancy was only minor. However, when the appointee is replacing a predecessor who had failed to serve out a full term, such as here, the new appointee should serve a new, full six years from the date of her appointment. This anomalous result further undermines appellee's interpretation of the statute. We have difficulty believing that Congress *sub silentio* created two different tracks with full six-year terms for those commissioners who succeeded appointees who by reason of death or resignation did not serve out their full terms, but truncated

terms for those who succeeded members who served for six years but whose vacancy was not immediately filled by presidential appointment. Nothing in section 1975(c) gives any indication that the phrase "the term of office of each member of the Commission" has two different meanings for two distinct classes of commissioner not otherwise recognized in the statute. The lack of such differentiation and appellee's concession that "delayed appointees" serve terms shortened by the interval between the expiration of their predecessors' term and the date of their appointment further supports our interpretation that, read together, the two sentences of § 1975(c) create fixed six-year terms that run with the calendar.

Our interpretation is consistent with widely held traditional understandings of statutes defining terms of office. The second edition of *American Jurisprudence* notes that "[w]here both the duration of the term of an office and the time of its commencement or termination are fixed by a constitution or statute, a person elected or appointed to fill a vacancy in such office holds for the unexpired portion of the term...." 63C Am.Jur.2d *Public Officers and Employees* § 148 (1997).

The controversy before us involves just such a term of office. The first sentence of § 1975(c) fixes the duration of the term: six years. The second sentence of § 1975(c) fixes the time of termination: the terms of the initial members expire at dates determinable from preexisting law. It is thus unsurprising that President Clinton issued a commission appointing appellee Wilson "for the remainder of the term expiring November 29, 2001." Reading § 1975(c) as a whole, we conclude that it creates fixed six-year terms of office that run with the calendar, rather than with the person. Thus, having been appointed to fulfill the remainder of Judge Higginbotham's term, expiring November 29, 2001, Wilson's time on the Commission is up.

2.

Our interpretation of § 1975(c) is further confirmed by background considerations such as relevant practices of the Executive Branch. Congress is presumed to preserve, not abrogate, the background understandings against which it legislates. *See, e.g., Bennett v. Spear,* 520 U.S. 154, 163, 117 S.Ct. 1154, 1161–62, 137 L.Ed.2d 281 (1997); *Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.,* 464 U.S. 30, 35, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983). "[L]ongstanding practices" of the Executive Branch can "place[ ] a 'gloss' on Congress's action in enacting" a particular provision. *Ass'n of Civilian Technicians v. FLRA,* 269 F.3d 1119, 1122 (D.C.Cir.2001). Here the consistent treatment of appointments by the Executive Branch provides such a "gloss."

Neither the 1983 Act nor the 1994 Act explicitly addressed delays in appointments of members *after* a predecessor's term had expired. Yet, it appears that every presidential appointee to the Commission since 1983 has been appointed to a term of office expiring six years from the date her predecessor's term expired. Even after the passage of the 1994 Act, with the changes appellees claim it made to the "terms of office," President Clinton appointed no less than four members to the commission for terms of less than six years. Three of these were delayed appointments, and the fourth is Victoria Wilson. Congress has reappropriated funds for the Commission, effectively reauthorizing it, each year since it was supposed to terminate in 1996, and yet it has not once suggested that the Executive Branch's implementation of the law was incorrect. It is not that the President's "interpretation" of

42 U.S.C. § 1975(c) is due deference, as suggested by appellants, but rather that the Executive Branch's interpretation of the law through its implementation colors the background against which Congress was legislating. Congress is presumed to be aware of established practices and authoritative interpretations of the coordinate branches. *E.g. National Lead Co. v. United States*, 252 U.S. 140, 147, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920) ("Congress is presumed to have legislated with knowledge of such an established usage of an executive department of the government."); *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978); *In re North*, 50 F.3d 42, 45 (D.C.Cir.1995) (Special Division). Here the Executive Branch's consistent practice provides a presumptive default.

Similarly, the practice of appointing members to the Commission on Civil Rights is but an example of what has been the unbroken position of the Attorney General and the Justice Department on executive appointments. As noted in an opinion issued by the Office of Legal Counsel on May 27, 1999, *Term of a Member of the Mississippi River Commission*:

> Ordinarily, when a statute provides for an appointee to serve a term of years, the specified time of service begins with the appointment. *Case of Chief Constructor Easby*, 16 Op. Att'y Gen. 656 (1880). *A different rule generally applies to commissions whose members have staggered terms*. There, to preserve the staggering required by statute, each member may serve only until the passage of the specified number of years *calculated from the expiration of his predecessor's term*, even if the member's confirmation and appointment take place after that prior term has expired.

(Emphasis added.) This latter rule has been consistently applied to executive appointments to the Commission on Civil Rights both in its previous incarnation under the 1983 Act and as constituted under the 1994 Act. Appointments have run six years from the date of the expiration of a predecessor's term–not from the date of appointment.[1] It is of course possible that the consistent practice of Presidents Clinton and Bush in appointing members of the Commission has been consistently wrong. However, we do not agree with appellee's interpretation compelling that conclusion. Rather, we hold that Presidents Clinton and Bush have it right. That is, the 1983 Act clearly intended to create staggering. The 1994 Act preserved this structure by providing for six-year terms with the terms of the initial commissioners expiring according to their commissions under the 1983 Act.

Furthermore, the consistent practice of the Executive Branch with respect to the filling of midterm vacancies on other bodies with staggered term members has been

---

1. At oral argument we requested information on Congress's own practices in making appointments to the Commission. The information appellees have provided shows that, unlike the Executive Branch, Congress has been inconsistent in its appointments under *both* the 1983 Act and the 1994 Act, generally failing to indicate termination dates for appointees, and on one occasion indicating the appointment was to run six years from the date of appointment. *See* 142 Cong. Rec. H1233–06 (1996) (Reappointment of Carl Anderson). Most recently however, the Speaker of the House appointed Abigail Thernstrom on January 6, 2001. *See* 147 Cong. Rec. H46–02 (2001). Thernstrom's initial appointment was apparently only to fill the remainder of a vacant seat, because she was reappointed by the Speaker, without objection, to the Commission "for a 6–year term beginning on February 12, 2002." *See* 148 Cong. Rec. H229–09 (2002). This most recent action by the House of Representatives is consistent with our interpretation of the statute.

to fill those vacancies for the duration of the unexpired term, preserving the staggering of terms. That this practice has been longstanding is illustrated by a dispute in the 19th century remarkably similar to the case at bar. In 1882, the Attorney General was asked by the President for his opinion of the term of office of a Commissioner of the District of Columbia who had been appointed after his predecessor failed to serve out a full term. *See Commissioners of the District of Columbia,* 17 Op. Att'y Gen. 476, 476 (1882). The governing statute provided for staggering with respect to the initial appointment of the two Commissioners, but was silent about both subsequent appointments and the filling of vacancies. Nonetheless, the Attorney General concluded that a Commissioner appointed to fill a vacancy could serve only for the remainder of his predecessor's unexpired term. As noted in Part II.A, *supra,* the Attorney General distinguished between terms running with the person and terms running with the calendar. He concluded that there must be "some apt expression of . . . intent" to create the latter kind of term, and found such an "apt expression" from the initial staggering of terms. *Id.* at 477. Were it to be otherwise, the staggering of the Commission would deteriorate, and frustrate Congress's purpose in establishing staggering in the first place. *See id.* at 477–78. He concluded that "[t]he fact that no express provision is made for filling vacancies which might arise by death or resignation is not significant." *Id.* at 478. In appointing Victoria Wilson for the remainder of Judge Higginbotham's term of office, President Clinton was following an established Executive Branch practice which was known to Congress. Had Congress intended to disrupt the staggering of members in its 1994 reauthorization of the Commission on Civil Rights, it could have affirmatively indicated that was its intent.

■ Appellee Wilson argues that if we held that each member of the Commission receives a six-year term of office running from the date of their appointment, her appointment, though reflected in her commission as "for the remainder of the term expiring November 29, 2001," would be effective as a six-year appointment expiring on January 12, 2006. In support of this proposition appellees cite *Quackenbush v. United States,* 177 U.S. 20, 27, 20 S.Ct. 530, 533, 44 L.Ed. 654 (1900), which notes in passing that "the terms of [a] commission cannot change the effect of the appointment as defined by . . . statute." That may be. But arguably Wilson may not have been validly *appointed* in the first instance.[2] It seems intuitive, as a matter of separation of powers, that the language of a nomination, confirmation, and commission cannot alter a statutory term, since it is given to Congress "under its legislative power" to "establish[ ] . . . offices, the determination of their functions and jurisdiction, the prescribing of reasonable and relevant qualifications and rules of eligibility of appointees, and *the fixing of the term for which they are to be appointed* and their compensation—all except as otherwise provided by the Constitution." *Myers v. United States,* 272 U.S. 52, 129, 47 S.Ct. 21, 29, 71 L.Ed. 160 (1926) (Taft, C.J.) (emphasis added). Indeed, this appears to be the position of the Department of Justice. *See, e.g.,* Office of Legal Counsel, Department of Justice, Memorandum

---

2. Wilson accepted her commission from President Clinton with it expressly stating that it was "for the remainder of the term expiring November 29, 2001." Subsequently she failed to challenge the terms of her commission prior to its expiration. Therefore she is arguably bound by those terms, and estopped from asserting an alleged violation of 42 U.S.C. § 1975(c). However, given our resolution, we need not decide.

for the Executive Clerk, "Term of a Member of the Mississippi River Commission," at 2 (May 27, 1999); *Case of Chief Constructor Easby,* 16 Op. Att'y Gen. 656, 657 (1880).

However, we are not considering an attempt by a President to intentionally circumvent a statute. Nor is this a case of mere scrivener's error. Rather, it is clear that President Clinton intended to appoint Wilson to the *remainder of a term* and not to a full six-year term, a position he reasonably believed existed. Were we to read the statute as prohibiting appointments to the remainder of a term then either Wilson's appointment must be to a six-year term, or alternatively, it was to a nonexistent position—the remainder of a term—raising a question as to the validity of her appointment in the first instance. It could be seen as an attempt by the President to appoint Wilson to a position that did not exist. In that case Wilson would never have been a valid member of the Commission in the first instance. However, because we read the statute as preserving staggering and thus permitting the appointment of Wilson to the remainder of a term of office, that problem need not concern us. As a result, Wilson's appointment by President Clinton was valid, but her term of office has subsequently expired.

### 3.

In addition to Executive Branch practices implementing a statute, background considerations, or "context," include related provisions in historically antecedent statutes. *E.g. Dep't of Commerce v. U.S. House of Rep.,* 525 U.S. 316, 339–40, 119 S.Ct. 765, 777–78, 142 L.Ed.2d 797 (1999). We need not rely on legislative history, of which there is little of relevance, to determine that staggering of terms was an important feature of the 1983 Act—the plain text and the historical events surrounding the 1983 reauthorization of the Commission demonstrate that fact. Congress went to great lengths to put various structural features in place to preserve the independence, autonomy, and non-partisan nature of the Commission. Clearly staggering was one of those features. *See* Pub.L. No. 98–183 § 2(b)(2), (3), 97 Stat. 1301 (1983). The 1983 Act was enacted at a time when Congress was responding to President Reagan's decision to remove and replace first two, then a total of five, members of the Commission. *See* Congressional Research Service, Tenure of Members of the Civil Rights Commission, Memorandum to House Subcommittee on the Constitution, at 2–3, 5 (Dec. 14, 2001). Thus it is evident that in staggering the membership (among other features), Congress was insulating the Commission from carte blanc replacement at any given time. To suggest that Congress abolished this practical structural feature without any indication that it intended to—evidenced by the fact that the Clinton and Bush Administrations continued to treat the Commission as a body with staggered membership—presents a highly improbable scenario. There is no evidence in or external to the 1994 Act that Congress meant to disrupt the system it had meticulously put into motion.

Appellees suggest that we can deduce Congress's intent to alter the terms of office created by the 1983 Act because the original version of the bill introduced in the House of Representatives to reauthorize the Commission provided that "the current staggering of terms shall continue in effect." H.R. 4999 § 2(c), 103d Cong. (1994). Appellees contend that the removal of this language demonstrates that Congress intended to disrupt the staggering created by the 1983 Act. However, it is at least equally plausible that Congress considered such language simply unnecessary

in light of the addition of the provision that the terms of "initial" members "shall expire on the date such term would have expired as of September 30, 1994." 42 U.S.C. § 1975(c). This language demonstrates that Congress intended to preserve the structure created under the 1983 Act.

Indeed, Congress used virtually the exact same language in defining the six-year term of office in both the 1983 and 1994 Acts: "The term of office of each member of the Commission shall be 6 years." 42 U.S.C. § 1975(c); Pub.L. No. 98–103 § 2(b)(2).[3] If anything this suggests that "term of office" retains the same meaning as it did in 1983. Since there is apparently no dispute that under the 1983 Act a "term of office" ran with the calendar, that same understanding would apply to the 1994 Act.

 Appellees' strongest argument that Congress intended to alter the structure of the Commission in adopting the 1994 Act is that it eliminated the provision providing that "any member appointed to fill a vacancy shall serve for the remainder of the term for which his predecessor was appointed." Pub.L. No. 98–103 § 2(b)(2)(B). This argument is not without force. As this Court has recognized: "Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning." *Muscogee (Creek) Nation v. Hodel,* 851 F.2d 1439, 1444 (D.C.Cir.1988). Further, there are numerous statutes creating boards and commissions that expressly provide for filling vacancies. However, here we have not a new agency, but a Commission that Congress had *already* established and was merely reauthorizing. In the process Congress removed provisions pertaining to the initial staggering of

the Commission which also included the vacancy provision. What that leaves is not different words, as in *Muscogee (Creek) Nation,* but rather silence. And not just silence, but silence coupled with ambiguous terms, well-established practices of the Executive Branch, and the perpetuation of a staggered board in the 1994 Act by providing that the terms of "initial" members "shall expire on the date such term would have expired as of September 30, 1994," under the 1983 Act. Had Congress intended to change the established practice for appointing members of the Commission on Civil Rights, it could have affirmatively indicated its intent to do so. It did not. "Congress is unlikely to intend any radical departures from past practice without making a point of saying so." *Jones v. United States,* 526 U.S. 227, 234, 119 S.Ct. 1215, 1220, 143 L.Ed.2d 311 (1999). These contextual considerations lead us to the conclusion that the 1994 Act maintained the structure of the Commission as reauthorized in 1983, and thus Wilson was appointed to fill an unexpired term, rather than to a new term of her own.

### 4.

Finally, we observe that our interpretation, unlike that urged by appellees, avoids anomalous results. As noted above, the creation of staggered terms was one of several structural features adopted in the 1983 Act to establish the Commission as an independent, bipartisan entity, to insulate it from political influence, and to protect its integrity and credibility. The district court contended that its decision would not result in "the complete elimination of all staggering," but acknowledged that its decision would result in the "absence of uniformly staggered terms." The district court further contended that "there is little, if any, substantive differ-

---

**3.** The only difference is that the 1983 Act spelled out "six."

ence between those two." We disagree. There is a substantial difference in having predictable terms ensuring that membership will turn over in a periodic and foreseeable manner, and having unpredictable vacancies that permanently disorder member terms. Not the least difference is the diffusion of appointment authority across presidential administrations. Moreover, there is no apparent reason Congress would originally create fixed, staggered terms, as it did under the 1983 Act, only to have them become unpredictably de-staggered over time as some members of the Commission resign, retire, are removed, or die.

█ Even more telling is the fact that the construction urged by appellees would invite the very sort of political manipulation leading to the reorganization of the Commission in 1983. For example, de-staggering could arise from concerted resignations near the end of a President's term, allowing an outgoing President to appoint several members of the Commission at once, precluding his successor from appointing any members of the Commission. Such "absurd results" are strongly disfavored. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982). Congress was attempting to insulate the Commission from this kind of carte blanc replacement at any given time. Appellees have no argument as to why these same policy considerations were no longer relevant in 1994 when Congress reauthorized the Commission. The absence of any policy justification for the construction urged by appellees provides yet an additional reason to conclude that Congress, when it established the "initial membership" of the Commission in the 1994 Act, *see* 42 U.S.C. § 1975(c), preserved the staggering it had set in motion in the 1983 Act, and did not intend for the benefits of that provision to be destroyed as some future appointees, either because of random events or strategic behavior inevitably failed to serve out their terms.

### III. Conclusion

Since the founding of the republic presidential appointees and their commissions have been a source of litigation, if not consternation. *See, e.g., Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 154, 2 L.Ed. 60 (1803). Here Wilson's commission corresponds to the terms of the statute pursuant to which she was appointed a member of the United States Commission on Civil Rights–42 U.S.C. § 1975. Part (c) of § 1975 provides that the "term of office of each member of the Commission shall be 6 years." The district court erred in holding that this provision unambiguously requires all Commissioners be appointed for six years, regardless of whether their predecessors completed their terms. Rather, § 1975(c) is also susceptible to the entirely reasonable interpretation that it establishes fixed terms of six years for members of the Commission–terms that run with the calendar–regardless of delay in appointment or the filling of mid-term vacancies. Having considered the two sentences of § 1975(c) in conjunction, practices of the Executive Branch in making appointments to this Commission and other bodies, the prior legislation, and the policy ramifications of the suggested interpretations of § 1975(c), we hold that the latter interpretation is correct. In enacting the 1994 Act, Congress did not disrupt the staggering of terms of Commission members created in the 1983 Act. Therefore, mid-term vacancies are to be filled only for the remainder of the unexpired term. Wilson was properly appointed by President Clinton only for the remainder of the unexpired term of Judge Higginbotham, as her commission indicates, and her service as a Commissioner terminated on November

29, 2001. Kirsanow, having been validly appointed to a vacant seat on the Commission, and having taken the oath of office, is a member of the United States Commission on Civil Rights "with all the powers, privileges, and emoluments thereunto of right appertaining" and has been since December 6, 2001. We reverse the district court and remand with instructions to enter summary judgment for the United States and Kirsanow. It is

*So ordered.*