# Application of 18 U.S.C. § 1913 to "Grass Roots" Lobbying by Union Representatives

Under 18 U.S.C. § 1913, federal employees who are union representatives may not use official time to engage in "grass roots" lobbying in which, on behalf of their unions, they ask members of the public to communicate with government officials in support of, or opposition to, legislation or other measures.

November 23, 2005

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

Your office has asked whether federal employees who are union representatives may use their official time to engage in "grass roots" lobbying in which, on behalf of their unions, they ask members of the public to communicate with government officials in support of, or opposition to, legislation or other measures.[1] We conclude that federal employees are barred from doing so by 18 U.S.C. § 1913. As discussed below, whether any particular activity would violate section 1913 will depend on the specific facts.

Central to our analysis is the distinction between direct and "grass roots" lobbying. This distinction has been extensively applied in decisions of our Office and the Government Accountability Office ("GAO") dealing with lobbying by government officials. For example, we have stated that 18 U.S.C. § 1913 "does not apply to direct communications between Department of Justice officials and Members of Congress and their staffs . . . in support of Administration or Department positions," but that the statute "may prohibit substantial 'grass roots' lobbying campaigns . . . designed to encourage members of the public to pressure Members of Congress to support Administration or Department legislative or appropriations proposals." *Constraints Imposed by 18 U.S.C. § 1913 on Lobbying Efforts*, 13 Op. O.L.C. 300, 301 (1989) ("1989 Opinion"). The essence of a "grass roots" campaign is the use of "telegrams, letters, and other private forms of communication expressly asking recipients to contact Members of Congress." Office of Legal Counsel, *Guidelines on 18 U.S.C. § 1913* at 2 (Apr. 14, 1995) ("1995 Guidelines") (attachment to Memorandum for the Heads of All Executive Departments and Agencies, from the Attorney General, *Re: Anti-Lobbying Act Guidelines* (Apr. 18, 1995)). Similarly, GAO has noted that appropriations riders imposing restrictions similar to those in section 1913 "apply primarily to indirect or grass-roots lobbying, and not to direct contact with or appeals to Members of Congress," *Lobbying Activity in Support of China Permanent Normal Trade*

---

[1] *See* Letter for Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Jane Dana, Acting General Counsel, Department of Commerce (June 20, 2005) ("Commerce Letter").

*Relations*, B-285,298, 2000 WL 675585, at *3 (Comp. Gen.) (citations omitted), and that "grass roots" lobbying involves "a clear appeal by the agency to the public to contact congressional members in support of the agency's position," *Social Security Administration—Grassroots Lobbying Allegation*, B-304,715, 2005 WL 991729, at *1 (Comp. Gen.).[2] As explained below, this same distinction is critical to identifying the limits of permissible lobbying by union representatives while they are on official time.

## I.

Section 1913 of title 18 currently provides:

> No part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, a jurisdiction, or an official of any government, to favor, adopt, or oppose, by vote or otherwise, any legislation, law, ratification, policy or appropriation, whether before or after the introduction of any bill, measure, or resolution proposing such legislation, law, ratification, policy or appropriation; but this shall not prevent officers or employees of the United States or of its departments or agencies from communicating to any such Member or official, at his request, or to Congress or such official, through the proper official channels, requests for any legislation, law, ratification, policy or appropriations which they deem necessary for the efficient conduct of the public business, or from making any communication whose prohibition by this section might, in the opinion of the Attorney General, violate the Constitution or interfere with the conduct of foreign policy, counter-intelligence, intelligence, or national security activities. Violations of this section shall constitute violations of section 1352(a) of title 31.

18 U.S.C. § 1913 (Supp. IV 2005). Funds "appropriated by . . . enactment[s] of Congress" within the meaning of section 1913 include funds used to pay the salaries of representatives of federal employees' unions insofar as they devote official time to their representational activities. *See* 5 U.S.C. § 7131(d) (2000). This expenditure of appropriated funds raises a question under 18 U.S.C. § 1913,

---

[2] We note that "the Comptroller General, as the agent of Congress, cannot issue interpretations of the law that are binding on the executive branch," *Comptroller General's Authority to Relieve Disbursing and Certifying Officials from Liability*, 15 Op. O.L.C. 80, 82 (1991), and here we do not endorse the holding of any particular opinion of the Comptroller General or the Government Accountability Office.

to the extent that such funds are thus "used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a member of Congress, a jurisdiction, or an official of any government, to favor, adopt, or oppose, by vote or otherwise, any legislation, law, ratification, policy or appropriation."

By its terms, section 1913 applies only "in the absence of express authorization by Congress," and Congress has elsewhere given express authorization for union representatives to use official time for *direct* lobbying on representational issues. Under 5 U.S.C. § 7102(1) (2000), each federal employee has the right

> to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities.

Section 7131(d) of title 5 states that

> [e]xcept as provided in the preceding subsections of this section [prohibiting the use of official time for activities relating to the internal business of a labor organization] . . . in connection with any other matter covered by this chapter [which includes section 7102], any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

We previously concluded that sections 7102 and 7131(d) together give "express authorization" under 18 U.S.C. § 1913 for union representatives "to lobby members of Congress on representational issues." Memorandum for Charlotte Hardnett, Acting General Counsel, Social Security Administration, from Daniel L. Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of 18 U.S.C. § 1913 to the Provision of Official Time to Employee Union Representatives to Lobby Congress on Representational Issues* at 1, 3 (Mar. 23, 2001) ("2001 Opinion"). The Federal Labor Relations Authority ("FLRA") has reached the same conclusion about the application of section 1913. *United States Department of the Army Corps of Engineers, Memphis District, Memphis, Tennessee and National Federation of Federal Employees Local 259*, 52 F.L.R.A. 920 (1997) ("*Army Corps of Engineers*").[3] The First Circuit, moreover, has

---

[3] *See also Soc. Sec. Admin., Balt., Md. & Am. Fed'n of Gov't Emps.*, 54 F.L.R.A. 600 (1998); *Ass'n of Civilian Technicians, Old Hickory Chapter, & U.S. Dep't of Defense, N.C. Nat'l Guard Bureau, Raleigh, N.C.*, 55 F.L.R.A. 811 (1999); *Ass'n of Civilian Technicians, Razorback Chapter 117, & U.S. Dep't of Defense, Nat'l Guard Bureau, Ark. Nat'l Guard, Camp Robinson, N. Little Rock, Ark.*, 56 F.L.R.A. 427 (2000) ("*Ark. Nat'l Guard*"); *cf. Dep't of Health & Human Servs., Soc. Sec. Admin., &*

strongly suggested the same view about application of the statute. In *Granite State Chapter, Association of Civilian Technicians v. FLRA*, 173 F.3d 25 (1st Cir. 1999), although the court held that an appropriations rider applicable to the Department of Defense barred any use of funds for lobbying, the court assumed that, absent the rider, union representatives could have lobbied Congress on official time. The court noted that the FLRA had found the use of funds for lobbying was consistent with section 1913 but was contrary to the rider. In affirming the FLRA's decision, the court wrote that the rider "repealed the Union's right to lobby Congress on official time as otherwise guaranteed by 5 U.S.C. § 7102." *Id.* at 28. *See also Ass'n of Civilian Technicians, Silver Barons Chapter v. FLRA*, 200 F.3d 590, 592 (9th Cir. 2000) (the rider "repeal[s] sections 7131 and 7102 . . . as they are read to allow [Department of Defense] employees to use official time to lobby Congress"); *Ass'n of Civilian Technicians, Tony Kempenich Mem'l Chapter 21 v. FLRA*, 269 F.3d 1119, 1122 (D.C. Cir. 2001) (agreeing with the First Circuit's decision but not referring to sections 7102 and 7131, except in reciting what the FLRA had decided).

These decisions—whether of this Office, the FLRA, or the courts—concern only direct lobbying. You have requested that we clarify the application of 18 U.S.C. § 1913 in the context of "grass roots" lobbying by union representatives. *See* Commerce Letter at 1.[4]

## II.

In our 2001 Opinion finding that the federal labor laws create an "express authorization" under 18 U.S.C. § 1913 for direct lobbying, we did not decide whether the prohibition in section 1913 is necessarily limited to lobbying by agency officials acting on behalf of their agencies' positions. There, because we concluded that there was "express authorization" for the lobbying at issue, we did not "need [to] decide whether the lobbying activities engaged in by such repre-sentatives are exempt from the prohibition of 18 U.S.C. § 1913 on any other ground." *Id.* at 4 n.3. Here, we must first resolve the question whether the

---

*Am. Fed'n of Gov't Emps., Local 3231*, 11 F.L.R.A. 7, 8 (1983) (in a case of direct lobbying, the FLRA finds that no violation of 18 U.S.C. § 1913 has been shown). In some other cases, without considering 18 U.S.C. § 1913, the FLRA has upheld union rights to engage in direct lobbying under some circumstances. *See, e.g.*, *Overseas Fed'n of Teachers, & Dep't of Def. Dependent Schs., Mediterranean Region*, 21 F.L.R.A. 757 (1986); *Nat'l Fed'n of Fed. Emps. Local 122 & U.S. Dep't of Veterans Affairs, Reg'l Office, Atlanta, Ga.*, 47 F.L.R.A. 1118 (1993).

[4] The FLRA declined our invitation to present its views on the question here. The Office of Person-nel Management expressed the view that "section 7102 as written does not presently contemplate the use of official time for lobbying that does not meet the direct lobbying standard as stated in Section 7102" and that "any request by a union representative for official time to engage in grass roots lobbying would not be authorized under section 7131 and therefore would be in contravention of the Anti-Lobbying Act, section 1913." Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Mark A. Robbins, General Counsel, Office of Personnel Management, *Re: Anti-Lobbying Act* at 2 (Aug. 22, 2005).

prohibition in section 1913 extends beyond agency officials' lobbying on behalf of their agencies. We conclude that section 1913 reaches the use of appropriations for "grass roots" lobbying even if not on behalf of an agency's position. We further conclude that Congress has not expressly authorized an exception for such lobbying by union representatives.

## A.

A statement in an FLRA opinion suggests an argument for why the prohibition in section 1913 might not apply to "grass roots" lobbying by union representatives. In *Army Corps of Engineers*, the FLRA wrote that

> when Congress enacted 18 U.S.C. § 1913, it intended to protect its members from indirect lobbying by agency officials. There is no evidence or assertion that the Union representatives in this case were lobbying indirectly on behalf of agency officials.

52 F.L.R.A. at 930 (citation omitted). Although the FLRA did not so hold, its statement that section 1913 was aimed at "agency officials" suggests a possible argument that 18 U.S.C. § 1913 would not apply at all to lobbying by union representatives on behalf of their unions, but only to lobbying on behalf of a federal agency.

We do not believe that section 1913 is limited to lobbying by agency officials as such. The prohibitory portion of section 1913—"[n]o part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly" for prohibited purposes—is not limited to the communication of agency positions. Rather, its language on its face applies to the use of appropriated funds for any communications designed to influence members of Congress or other officials with respect to any legislation, law, ratification, policy, or appropriation. As noted, relevant appropriations include funds used to pay the salaries of federal employees who are representatives of federal employees' unions, insofar as those employees devote official time to their representational activities. Moreover, amendments to section 1913 enacted in 2002 removed language that had limited the penalties under that section to "an officer or employee of the United States or of any department or agency thereof," Pub. L. No. 107-273, div. A, § 205(b), 116 Stat. 1778 (2002), and thus undermined any argument that only lobbying by persons acting for an agency in an official capacity would be covered.

The only portion of section 1913 that refers to "officers or employees of the United States or of its departments or agencies" who are communicating an agency position is not the prohibition but the exception to the prohibition. There is no reason to read that clause as implying that the prohibition itself is limited to such communications; rather, it is naturally read to do just what it says it does: to create an exception for communications whose prohibition this Office has long

believed would raise constitutional concerns. *See, e.g.*, 1989 Opinion, 13 Op. O.L.C. at 305–06.

Furthermore, although the language of section 1913 has been read narrowly to avoid constitutional concerns that would arise from its application to government officials, no such concerns would justify a narrowing construction of the language so as not to apply it to "grass roots" lobbying by federal employees who are union representatives. A broad interpretation of the law, as applied to those speaking for the Executive Branch, could "interfere with the President's constitutionally mandated role in the legislative process," "infringe upon his constitutional obligation to 'take Care that the Laws be faithfully executed,'" and "weaken the constitutional framework established in Article II, which in general imposes on the President the duty to communicate with the American people." 1989 Opinion, 13 Op. O.L.C. at 305. These separation of powers concerns do not apply to lobbying on behalf of unions. *See Office of the Adjutant Gen., N.H. Nat'l Guard, Concord, N.H. & Granite State Chapter, Ass'n of Civilian Technicians*, 54 F.L.R.A. 301, 312 (1998), *aff'd*, *Granite State Chapter*, 173 F.3d 25. Nor does such lobbying raise First Amendment issues that might call for a narrowing construction, because nothing in 18 U.S.C. § 1913 affects what private persons may say while on their own time. *See Tony Kempenich Mem'l Chapter 21*, 269 F.3d at 1122 (addressing First Amendment argument under an appropriations rider). Accordingly, we find no reason to give 18 U.S.C. § 1913, in this context, an interpretation that is narrower than its words would otherwise indicate.[5]

## B.

We therefore turn to the question whether the federal laws, which give "express authorization" for direct lobbying of Congress by federal employees who are union representatives, also offer "express authorization" for "grass roots" lobbying by such employees. We believe that they do not provide such authorization. Section 7102 of title 5 guarantees that union representatives may "present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities." By its terms, this guarantee is confined to direct lobbying and does not mention the presentation of views to members of the public, let alone a request

---

[5] In an analogous situation, an appropriations rider that deals with lobbying and is couched in general language not referring specifically to agencies or their officials—"[n]one of the funds made available by this Act shall be used in any way, directly or indirectly to influence congressional action on any legislation or appropriations matters pending before the Congress"—has been construed to reach expenditures for the salaries of union representatives engaged in lobbying. *See Granite State Chapter*, 173 F.3d at 27–28 (quoting Pub. L. No. 104-61, § 8015, 109 Stat. 636, 654 (1996)). *See also Headquarters, Nat'l Guard Bureau, Washington, D.C., Nev. Air Nat'l Guard, Reno, Nev., & Ass'n of Civilian Technicians, Silver Barons Chapter, Reno, Nev.*, 54 F.L.R.A. 316 (1998), *reaff'd*, 54 F.L.R.A. 595 (1998); *Office of the Adjutant Gen., N.H. Nat'l Guard, Concord, N.H. & Granite State Chapter, Ass'n of Civilian Technicians*, 54 F.L.R.A. 301, *aff'd*, *Granite State Chapter*, 173 F.3d 25.

that the public contact government officials. It therefore does not amount to the "express authorization" that would create an exception to 18 U.S.C. § 1913 for "grass roots" lobbying. And, as noted, section 7131(d) of title 5 is derivative of section 7102.

There is some precedent in this area for finding an "express" authorization even in the absence of clear words, but it does not apply here. *See* 1989 Opinion, 13 Op. O.L.C. at 303 ("We believe that Congress' continued appropriation of funds for positions held by executive branch officials whose duties historically have included seeking support for the Administration's legislative program constitutes 'express authorization by Congress' for the lobbying activities of these officials . . . .").[6] "Grass roots" lobbying is the core of the statutory prohibition. *See* 1995 Guidelines at 2. The conduct now in question is within that core, and there are no constitutional considerations that would demand a flexible understanding of "express authorization" here. *Cf. id.* at 1 (in the context of communications by the Executive Branch, 18 U.S.C. § 1913, "[i]f applied according to its literal terms," would raise concerns about separation of powers and "if so applied, might be unconstitutional").

There would seem to be two additional potential arguments against our reading of section 7102. We do not believe that either argument would be persuasive.

First, the FLRA has stated that "[c]ommunicating *with the public* to encourage others to make common cause with the employees' collective bargaining representative . . . is merely a logical extension of a Union's Section 7102 rights and accordingly . . . such conduct is protected by the Statute." *Dep't of the Air Force, 3d Combat Support Group, Clark Air Base, Republic of the Philippines & Overseas Educ. Ass'n, Pacific Region*, 29 F.L.R.A. 1044, 1062–63 (1987) ("*Clark Air Base*") (conclusion of Administrative Law Judge, which the FLRA adopted) (emphasis added).[7] The FLRA has also indicated that in certain circumstances, section 7102 may protect "the right to publicize matters affecting unit employees' terms and conditions of employment." *Dep't of the Air Force, Scott Air Force Base, Ill. & Nat'l Ass'n of Gov't Emps. Local R7-23, SEIU, AFL-CIO*, 34 F.L.R.A. 1129, 1135 (1990). But, to the extent that these statements might be read to find an express authorization for "grass roots" lobbying, they would go astray from the statutory text. We do not see how the federal labor laws, in guaranteeing a right

---

[6] Even while finding express authorization in congressional appropriations for certain positions whose official duties included well-established lobbying activities, we "caution[ed] . . . against these officials engaging in 'grass-roots' campaigns of the type mentioned in the legislative history to section 1913." 1989 Opinion, 13 Op. O.L.C. at 303 n.5 (citation omitted).

[7] *Accord U.S. Marine Corps Base Camp Smedley D. Butler, Okinawa, Japan, & Overseas Educ. Ass'n, Pacific Region*, 29 F.L.R.A. 1068, 1080 (1987) ("*Camp Smedley T. Butler*") (same); *Dep't of the Air Force, 18th Combat Support Wing, Kadena Air Base, Okinawa, Japan, & Overseas Educ. Ass'n, Pacific Region*, 29 F.L.R.A. 1085, 1097 (1987) ("*Kadena Air Base*") (same). *See generally Bureau of Prisons, Fed. Corr. Inst. (Danbury, Ct.) & Am. Fed'n of Gov't Emps., Council of Prison Locals C-33, Local 1661, AFL-CIO*, 17 F.L.R.A. 696, 696–97 (1985) ("*Bureau of Prisons*").

"to present the views of [a] labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities" can reasonably be said to give an "express authorization" for urging the public to communicate with government officials.

In its decision in *Army Corps of Engineers*, which concerned *direct* lobbying, the FLRA stated that, in enacting 18 U.S.C. § 1913, Congress "intended to protect its Members from *indirect* lobbying by agency officials" and that "there are significant questions whether the Union's lobbying activities are within the definition of items that Congress prohibited in 18 U.S.C. § 1913." 52 F.L.R.A. at 930–31 (emphasis added). It went on to find that it was unnecessary to determine whether section 1913 would otherwise reach the lobbying by the union because 5 U.S.C. §§ 7102 and 7131 gave "express authorization" to the direct lobbying activities at issue there. 52 F.L.R.A. at 930–31. This decision could be read to suggest that, whether union lobbying involves direct communications or indirect "grass roots" efforts, it is within the express authorization of the federal labor laws.[8] But the decision can as easily be read only to preserve the argument, similar to the one that we rejected above, that an appropriations rider applies only to agency officials acting in an official capacity on behalf of their agencies. *See Ark. Nat'l Guard*, 56 F.L.R.A. at 430 (relying on *Army Corps of Engineers* and apparently preserving the argument about application solely to agency officials). Moreover, the FLRA's holding in the case was limited to direct lobbying: "[T]he Statute [enacting the federal labor laws] constitutes 'an express authorization by Congress' for using Federal funds to grant official time to employees *to lobby Congress* on representational matters." *Army Corps of Engineers*, 52 F.L.R.A. at 933 (emphasis added).

Second, it might be argued that section 7102 authorizes "grass roots" lobbying on the ground that such lobbying may enable the public to serve as the conduit by which union representatives present their views to government officials. But any such argument would require a strained and unnatural reading of the phrase "to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities." In the communications that are intended to result from "grass roots" lobbying, members of the public, not the union representatives, would be making the presentation, and the views that government officials receive would be presented as the public's views, rather than "the views of the labor organization." The purpose of a "grass roots" campaign is to bring public pressure to bear on government officials, not to provide an indirect route for views that are attributed

---

[8] *But see Office of the Adjutant Gen., Ga. Dep't of Def., Atlanta, Ga., & Ga. State Chapter Ass'n of Civilian Technicians*, 54 F.L.R.A. 654, 666 n.9 (1988) (with regard to an appropriations rider, the FLRA found it "unnecessary to address the Respondent's assertion that the activities for which official time was sought in this case are a form of 'grass roots' lobbying, as defined by the GAO, for which the use of appropriated funds is prohibited"); *see also Ark. Nat'l Guard*, 56 F.L.R.A. at 430 (reporting view of Chairman Wasserman).

to the union. Thus, when a union representative engages in "grass roots" lobbying of the sort that 18 U.S.C. § 1913 may bar—an appeal to the public to communicate with government officials—the federal labor laws offer no protection.[9]

## C.

Whether any specific activity amounts to "grass roots" lobbying within the prohibition of section 1913 depends, of course, on the facts of the case, and we cannot determine such issues in the abstract. There may be uncertainty, for example, whether a particular communication urges recipients to communicate with government officials. We address here only your question whether the federal labor laws categorically exclude union representatives' "grass roots" lobbying from the reach of 18 U.S.C. § 1913. We conclude that they do not.

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[9] In *Clark Air Base*, *Kadena Air Base*, and *Camp Smedley T. Butler*, the FLRA held, outside the context of section 1913, that section 7102 protected union requests for members of the public to write to their Senators and Representatives. *Camp Smedley T. Butler*, 29 F.L.R.A. at 1076. The FLRA, however, did not consider the application of 18 U.S.C. § 1913 to this "grass roots" lobbying. Indeed, at least the version of 18 U.S.C. § 1913 in effect in 1986, when the events at issue in those cases took place, apparently would not have applied in any event to the lobbying there. At the time, 18 U.S.C. § 1913 reached only activities "intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress," 18 U.S.C. § 1913 (1982), but the communications to Congress at issue sought action with regard to how the Department of Defense was allocating cuts in spending, including those already mandated by the Gramm-Rudman-Hollings Act, Pub. L. No. 99-177, 99 Stat. 1037 (1985), rather than action on any "legislation or appropriation by Congress." *See Camp Smedley T. Butler*, 29 F.L.R.A. at 1073–74, 1078. In our view, these decisions do not even implicitly suggest that section 7102 gives an "express authorization" for "grass roots" lobbying that 18 U.S.C. § 1913 would otherwise forbid. *Cf. Dep't of the Air Force, Scott Air Force Base, Ill., and Nat'l Ass'n of Gov't Emps., Local R7-23, SIEU, AFL-CIO*, 34 F.L.R.A. 1129 (1990) (agency lawfully refused, on grounds other than restrictions on lobbying, to allow union to place advertisement in base newspaper, urging readers to communicate with Congress on a non-legislative matter). In addition, in these decisions, the FLRA did not mention an earlier case in which it had stated that section 7102 did not apply where a letter drafted by a union "was intended to be adopted and sent by individual employees as a statement of their own individual views and not as their presentation to the Congress of the views of the Union." *U.S. Air Force, Lowry Air Force Base, Denver, Colo., & Am. Fed'n of Gov't Emps., AFL-CIO, Local 974*, 16 F.L.R.A. 952, 964 (1984). The FLRA declared that "[s]ection 7102 protects representatives of labor organizations in their presentation of the views of the labor organization to Congress," *id.*, and therefore did not cover the presentation of individual views that the union was trying to generate. The FLRA did find that communications by employees could be covered by 5 U.S.C. § 7211 (1982), which forbids interference with the "[t]he right of employees, individually or collectively, to petition Congress or a Member of Congress." A grant of official time under 5 U.S.C. § 7131(d), however, appears limited to matters "covered by . . . chapter [71 of title 5]," and section 7211 is in chapter 72. The guarantee of non-interference, therefore, does not convey a right to use official time.